ZABDIEL A. WILLARD & others *vs.* MARY G. WARE & others.

If a testator, after disposing of all his estate by will, conveys land in trust for his six children and their issue, and in case of their death without issue then for his heirs, reserving to himself full power to alter the trusts by deed or will; marries a second wife; loses one child; and subsequently makes a codicil to his will, giving to his wife " in fee simple one sixth part of the whole estate and property, real, personal and mixed, whereof I die possessed, it being my intention to give to her what would be her legal share if she were one of my children," and ratifies and confirms his will in all respects in which it is not qualified by the codicil; and if in the will and deed of trust he has preserved equality among his children; this codicil will operate as an execution of the power of disposal, which the testator reserved to himself, of the estate conveyed by the deed of trust, and his widow will be entitled to one sixth of his whole estate, and the other five sixths will be disposed of according to the directions of the will, irrespective of the deed of trust.

BILL IN EQUITY by the trustees under the will, and also under a deed of trust, of John Ware, deceased, seeking for instructions as to the proper execution of the trusts.

The bill set forth the following facts : On the 27th of February 1860 John Ware conveyed to trustees (two of the present plaintiffs being two of the said trustees, and the third plaintiff being successor of the third trustee, who has since died) one undivided quarter part of certain real estate in Boston, in trust, to pay the whole income (after paying certain expenses) to his six children, who were named, during their respective lives, and after the death of any of them to pay the share of such deceased to his or her lawful issue, and upon the death of any of them leaving no lawful issue living, to pay the share of such deceased to the same person or persons and in the same proportions as the remainder of the income of the trust; and upon the death of all the above named children of the said John Ware to convey the above granted premises to their lawful issue in the same proportions in which they would have taken the income if the trust above declared and limited had continued ; or, if they shall have no such issue living at the death of the last survivor, to the heirs at law of the said John Ware ; and notwithstanding anything hereinbefore contained to dispose of the granted premises in such manner, or hold the same upon such trusts, as the said

John Ware shall by his deed or by his last will and testament duly executed appoint.

In February 1862 John Ware married Mary G. Chandler, who survived him; in April 1863 one of his sons died unmarried and without issue; and on the 29th of April 1864 John Ware died, seised of a large estate, real and personal, and leaving a will and codicil.

The will was dated December 1st 1853, and by it the testator gave certain real estate to his wife Helen, who died before him, and devised all the remainder of his estates, both real and personal, in trust for his wife and children, the latter sharing equally therein. The codicil was dated April 28th 1864, and the following is the material portion thereof:

"I, John Ware, of the city of Boston, physician, make this codicil to my last will. I give, bequeath and devise unto my wife Mary G. Ware, in fee simple, one sixth part of the whole estate and property, real, personal or mixed, whereof I die possessed. It being my intention to give to her what would be her legal share if she were one of my children. She, my said wife, to accept and receive the same in stead and in satisfaction of her rights and claims to dower.

"And I hereby ratify and confirm my last will above mentioned, in all respects wherein it is not inconsistent with or affected or qualified by this codicil; the said last will bearing date the first day of December in the year eighteen hundred and fifty three."

The case was reserved by the chief justice for the determination of the whole court.

*J Lathrop*, for Mary G. Ware. There are two questions in this case: 1st, whether Mrs. Ware takes one sixth of the undivided quarter part of the estate covered by the deed of trust and 2dly, whether she takes her one sixth of whatever she may be determined to be entitled to in fee, or subject to the trusts imposed on the other five sixths.

That the codicil operates as an appointment in favor of Mrs Ware is established by *Amory* v. *Meredith*, 7 Allen, 397. And this was the intent of the testator. *Maddison* v. *Andrew*, 1

Ves. Sen. 61. Sugden on Powers, (8th ed.) 337. It is also plainly declared to be his intent that she should take an estate in fee. See *Brown* v. *Wood*, 17 Mass. 68; *Godfrey* v. *Humphrey*, 18 Pick. 537.

*W. G. Russell*, for certain of the children of John Ware, but in support of the same view. The general residuary clause in the will is an execution of the power of appointment reserved in the deed of trust, notwithstanding the power was created after the date of the will. *Winchester* v. *Forster*, 3 Cush. 366, and cases cited. Gen. Sts. *c.* 92, § 4. *St.* 1 Vict. *c.* 26, § 24. *Stillman* v. *Weedon*, 16 Sim. 26. *Cofield* v. *Pollard*, 3 Jur. (N. S.) 1203. *Thomas* v. *Jones*, 2 Johns. & Hemming, 475. Sugden on Powers, (8th ed.) 306, 309. But if the will does not have this effect, the codicil certainly has. *Brownell* v. *DeWolf*, 3 Mason, 494. *Goodtitle* v. *Meredith*, 2 M. & S. 5. *Winter* v. *Winter*, 5 Hare, 306. *Washburn* v. *Sewall*, 4 Met. 63. *Doe* v. *Walker*, 12 M. & W. 591. *Coppin* v. *Fernyhough*, 2 Bro. C. C. 291. *Barnes* v. *Crow*, 4 Bro. C. C. 2. 1 Jarman on Wills, (4th Amer. ed.) 178. The language of the codicil shows that the testator intended to die testate as to the whole of his estate, including that covered by the deed of trust. The express reference to the subject matter of the power, and the actual disposal of a part of the estate under it, are sufficient evidence of an intent to execute the power over the remainder of the estate. Sugden on Powers, (8th ed.) 338, 342. *Standen* v. *Standen*, 2 Ves. Jr. 589. *Walker* v. *Mackie;* 4 Russ. R. 76. *Elliott* v. *Elliott*, 15 Sim. 321. *Reid* v. *Reid*, 25 Beav. 469. *Bush* v. *Cowan*, 32 Beav. 228.

*G. Putnam, Jr.*, for the guardian *ad litem* of the grandchildren of John Ware. The case of *Amory* v. *Meredith* stands perfectly well on the presumable intent of the testator. The true rule seems to be that if, upon a fair consideration of the testator's circumstances and the language of his will, he seems to have intended to exercise the power, he will be deemed to have done so, although the will may not in terms refer to it or to its subject. The present case is different from *Amory* v. *Meredith* in these particulars: 1. The property over which the testator had a power was not in his possession or enjoyment. 2. In

*Amory* v. *Meredith*, there was no disposition of the property in the trust deed in failure of appointment. In the present case, as careful provision was made for the case of a default of appointment, it may well be inferred that the testator meant that the property should remain as it was settled until he should modify the uses of the deed by some distinct and unequivocal act. See Sugden on Powers, (8th ed.) 305, 306. The clause in the codicil in favor of Mrs. Ware is modified and explained by the next clause, which declares it to be the testator's intention that she should have what would have been her legal share if she had been one of his children. This means, if he had died intestate. *Daggett* v. *Slack*, 8 Met. 450. *Tillinghast* v. *Cook*, 9 Met. 143.

This will should not operate as an appointment, by reason of the doctrine that a will is deemed to speak from the death of the testator, because that doctrine is a rule of intention, and is not permitted to operate against the intention of the testator. *Langdon* v. *Astor*, 16 N. Y. 9, 38. As, for example, it will not revive an adeemed legacy; *Cowper* v. *Mantell*, 22 Beav. 223; *Paine* v. *Parsons*, 14 Pick. 318; Redfield on Wills, 368 *n*; or exercise a power created since the date of the will; *Holmes* v. *Coghill*, 7 Ves. 499; *Jewett* v. *Board*, 16 Sim. 352. The present case is within both of these exceptions. In seeking for the intent of a testator, that meaning should be given to his language which the law gave to it at the time he used it.

HOAR, J. This cause has been delayed for some time under advisement, and has been repeatedly considered by the court. It presents a question of very great difficulty, and one which not only permits something of much force to be said on each side, but of which a decision either way is not likely to be wholly satisfactory. Still it is our duty to decide it, and to give the best interpretation in our power of the very doubtful lan guage used by the testator whose will and codicil we are required to construe.

In *Amory* v. *Meredith*, 7 Allen, 397, it was held that the rule adopted by the English courts of equity, in determining whether a general power of disposing of property was executed by a

general devise or bequest of the property of a testator, was not a sound rule of construction; that it had been found in a large majority of cases to defeat instead of furthering·the intent of the testator, to ascertain and make effectual which is the chief duty of courts in interpreting the language of wills; and that a different rule must be applied. We therefore determined that where there was a general power of disposal, a general bequest or devise would be presumed to include an exercise of the power, if there were nothing to show a contrary intent; and that this presumption should certainly be decisive·in a case where the general power of disposal was accompanied by the beneficia· use of the property which was the subject of the power, and where the power was created by the testator.

The case at bar differs from that in the important particular, that here the beneficial use under the deed of trust which created the power was not reserved to the testator, unless perhaps by implication upon the remote contingency of all his children dying without issue before him. The power was also created after the execution of the will.

But in looking at the language of the codicil, considered in relation to all the circumstances of the case, we have come to the conclusion that the will is an execution of the power reserved by the trust deed, and that neither of the considerations adverted to is decisive against it.

The will, made in the year 1853, provided for the testator's wife, then living, in a manner which became inoperative and unimportant upon her death; and gave the whole residue of his property in trust for his children and their issue. In 1860, his wife having died, and his children being arrived·at adult age, and some of them married, by a deed of trust he conveyed one undivided fourth of a valuable parcel of real estate which constituted the bulk of his property, to three trustees, two of whom were also trustees under his will, in trust for his six children, by name, and their issue; and in case of their death without issue, in trust for his own heirs. He reserved to himself the most complete and absolute·power, by deed or will, to alter the uses or the trusts. In 1862 he married again. In 1863, he lost one of

his sons by death, who was a trustee under the will and deed of trust. In 1864, he made the brief codicil which is before us for construction ; and died the day after it was made. The codicil contains three clauses of importance. It first gives to his wife " in fee simple, one sixth part of the whole estate and property, real, personal or mixed, whereof I die possessed." The explanatory statement follows, " it being my intention to give to her what would be her legal share if she were one of my children." And then it ratifies and confirms his last will in all respects in which it is not inconsistent with or affected or qualified by the codicil.

It is to be observed that in the will, and in the deed of trust, the testator had preserved the most careful equality among his children in the amount of property appropriated to their use. One of his children had died ; and he wishes to give his wife one sixth of his whole estate and property of which he should die possessed. This proportion is chosen for the reason that it will put her on an equality with his children. Such we think is the fair interpretation of his language. If then we find that under the rule in *Amory* v. *Meredith* " the property of which he should die possessed " would be presumed to include, in his own understanding of the phrase, property which had been his own and of which he retained the absolute and unlimited power of disposal, the devise to her would include the estate held under the deed of trust. It would give his wife the exact position of the child he had lost. The phrase " legal share," it is argued, indicates that he meant the share which would have gone to a child if he had died intestate. But we think this was not the sense in which the testator used the word. He would hardly have thought that he was giving a new child his full legal share of his estate, if there were a considerable proportion of his property, entirely subject to his disposal by will, appropriated exclusively to his other children, and in which that child was not allowed to participate.

We are not unmindful of the force of the suggestion made by Lord St. Leonards, in commenting on the case of *Moss* v *Harter*, that " when the property is settled by the testator himself

upon others, in default of any appointment by him under his power, it would seem to require some indication of an intention by him to defeat his settlement, in order to hold a general gift in his will, which can be satisfied by other property, to be an execution of his power." Sugden on Powers, (8th ed.) 305. But we think the indication of such an intention sufficient in the present case.

The view which we have taken is strengthened, in our judgment, by the express ratification and republication of the will which the codicil contains. This makes the will speak as from the date of the codicil; and the disposition being construed to refer to all the property of which the testator had then the absolute power of disposal, these two considerations will bring the case substantially within the principle of the decision of *Stillman* v. *Weedon,* 16 Sim. 26, upon the effect of the 24th and 27th sections of the English Statute of Wills of 1 Vict. *c.* 26. The cases in which the republication of a will has not been held to give it the effect of executing a power created after the original date of the will seem all to stand upon peculiar phraseology indicative of the intent of the testator.

As we hold that the power is executed by the codicil upon the one sixth part given to Mrs. Ware in fee, it follows that the testator, by dealing with the property subject to the power, gives a sufficient indication of an intention to execute it wholly; and that the residue of the estate conveyed by the deed of trust is appointed to be held upon the trusts set forth, and by the trustees named, in the will. *Standen* v. *Standen,* 2 Ves. Jr. 589. And it is a highly reasonable presumption that the testator would not have desired that undivided interests in the same piece of property should be held after his decease by separate trustees, when the whole was intended for the benefit of the same persons. The construction which we give to the codicil seems most likely to effect his intention; and we think it can be reasonably deduced, though not with absolute clearness and certainty, from the language in which his purposes were expressed.

A decree will be entered that the codicil operates as an execution of the power of disposal of all the property conveyed by

the deed of trust; that Mary G. Ware is entitled to one sixth part of the whole residue of the estate of the testator remaining for distribution after the settlement of the estate, including the property described in the deed of trust, in fee simple; that the remainder is to be held by the surviving trustees under the will, upon the trusts set forth in the will; and that the costs of all the parties be allowed and paid out of the entire estate in the hands of the administrator.