# Thompson *v.* Wanamaker's Trustee et al., Appellants.

*Wills—General devise—Power of appointment—Exercise of— Residuary estate—Real estate held under trust created by testator —Words and phrases—"Possessed"—"Seized"—Act of June 4, 1879, P. L. 88.*

1. Where one, possessing a power to dispose of real estate by his last will, and having no other real estate except that over which he possesses the power, devises generally all his real estate, such devise is deemed to be made in execution of the power, although such power is not specifically referred to, and although the particular real estate embraced in the power is not specifically described in the devise.

2. Where testator, for reasons of his own, segregates his real estate, by placing it in trust, and in the deeds of trust, expressly, and first of all, reserves to himself the right of actual management or control during his life and of testamentary disposition at his death, and, at the time of making his will, he has no real estate other than that so held in trust, a general residuary devise of real estate in his will operates ex necessitate upon the properties held in trust as an exercise of his reserved right of testamentary disposition, and this without regard to the Act of June 4, 1879, P. L. 88.

3. The fact that testator in his will grants to his executors power to lease and mortgage, or to sell, real estate of which he might be "possessed" or "seized" at the time of his death, does not prove that he intended to deal in his will with property other than that which he had placed in trust during his life.

4. There is nothing in the words "possessed" or "seized" which in modern times imports legal title, as distinct from beneficial ownership.

5. Where a testator executes several deeds of trust by which he places all of his real estate in trust, with power of management reserved to himself during his life, and power of testamentary disposition at his death, with limitation to children in default of appointment, and two years after the last deed is made, and at a time when he owns no other real estate than that in trust, executes a will by which he makes a general residuary devise of realty, such devise will not be construed as excluding the real estate held in trust because the testator states in his will that the provision made for the son had not been made from lack of paren-

tal love for him, but because "I am making ample provision for him in my life time," if it appears that a large accumulation of securities had been made for the son, all of which had been registered in the name of the son or in his (father's) own name as trustee for his son. In such language testator will be deemed to have been referring to the accumulations of securities, and not to the real estate held in trust.

*Wills—Powers—Exercise of power—Burden of proof—Act of June 4, 1879, P. L. 88.*

6. Under the Act of June 4, 1879, P. L. 88, which shifts the burden of proof theretofore prevailing, one who denies that a general devise executes a general power of appointment must prove "by what appears on the face of the will" that it was testator's "clearly expressed" intention the devise in question "should not do so"; and this rule is particularly applicable when the general power was accompanied by the beneficial use of the property which was the subject of the power, and where the power was created by testator.

7. Where it is claimed that the provisions in a will overcome the rule that a general devise is presumed to execute a power of appointment, if the provisions relied on for that purpose are susceptible of reasonable explanation consistent with the operation of the rule, such explanation should be accepted.

Argued May 10, 1920. Appeals, Nos. 37, 40 and 41, Jan. T., 1920, by defendants, from decree of C. P. No. 5, Phila. Co., Dec. T., 1917, No. 3913, on bill in equity in case of Mary Lowber Thomson v. Fidelity Trust Company, Louis Rodman Wanamaker, testamentary guardian of Rodman Wanamaker, the second, and William L. Nevin, guardian of the Estate of Thomas B. Wanamaker, Jr. Before BROWN, C. J., STEWART, MOSCH-ZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Bill in equity for accounting and for conveyance of real estate. Before MARTIN, P. J.

The opinion of the Supreme Court states the facts.

The court entered a decree in accordance with the prayers of the bill. Defendants appealed.

*Error assigned* was, inter alia, the decree of the court.

*Francis B. Bracken,* with him *Morgan, Lewis & Bockius,* for Fidelity Trust Company, appellant.—The will of Thomas B. Wanamaker, interpreted in the light of the circumstances, indicated a clear intention not to execute the power of appointment reserved in the deeds creating trusts for his own benefit during his lifetime, and for the benefit of his children after his death: Huddy's Est., 236 Pa. 276.

The deeds of trust, in providing that the properties should be held and disposed of for the benefit of his children in default of the exercise of the power of appointment by Thomas B. Wanamaker, operated in law to give them vested interests in the properties, subject to be divested only by the exercise of the power of appointment: Bryce's Est., 238 Pa. 519; Freeman's Est., 35 Pa. Superior Ct. 185; Evans's Est., 10 Pa. Dist. R. 261; Cunningham v. Moody, 1 Vesey 174; Safe Dep. & Trust Co. v. Friend, 201 Pa. 429; Woelpper's Est., 126 Pa. 562.

*John C. Bell,* of *Bell, Trinkler & Deeter,* for appellee. —The general devise in the residuary clause of the will interpreted in the light of the Act of June 4, 1879, is an execution of the testator's power of appointment; and hence one-third of said real estate is now vested in the widow. The law assumes this execution of the power was the intention of the testator unless a "contrary intention" appears by the will.

The burden is upon the appellants, asserting that the "contrary intention" appears by the will, to prove this contrary intention clearly and free from doubt: Fidelity Co.'s App., 108 Pa. 492; Thayer v. Wellington, 91 Mass. 283; Walker v. Banks, 1 Jurist N. S. 606; Thomas v. Jones, 2 Johnson & Hemmings, Ch. R. 475; Mortimer v. Mortimer, 1907, 1 Ch. 445; Lake v. Currie, 2 DeG., M. & G. 536; Hutchins v. Osborne, 4 Kay & Johnson 252.

The sentence in the seventh clause of the will, interpreted in the light of the circumstances, does not satisfy this burden and prove this contrary intention clearly and free from doubt; but just the reverse, the language of the will and the circumstances, disprove such contrary intention and confirm the presumption of the execution of the power.

*M. B. Saul,* of *Prichard, Saul, Bayard & Evans,* for Louis Rodman Wanamaker et al., appellants.

OPINION BY MR. JUSTICE MOSCHZISKER, June 26, 1920:

Mary Lowber (Welsh) Thomson, formerly Wanamaker, brought a proceeding against the Fidelity Trust Company, to obtain an accounting and other equitable relief, alleging that, under the will of her first husband, Thomas B. Wanamaker, deceased, she was entitled to an undivided one-third interest in certain real estate, standing in the name of defendant as trustee. At the suggestion of the trust company, Louis Rodman Wanamaker, testamentary guardian of Rodman Wanamaker, 2d, and William L. Nevin, guardian of Thomas B. Wanamaker, Jr., were added as defendants. The case was decided by the court below in plaintiff's favor, and all three defendants have appealed.

Thomas B. Wanamaker died March 8, 1908, leaving a will, dated March 16, 1904, by which, after making certain minor bequests to servants, giving a watch to his father, and his household goods, etc., to his widow, he disposed of the balance of his estate thus: "All the rest, residue and remainder of my estate, real and personal, of what kind or character soever, and wheresoever located, I dispose of as follows: One-third part or share thereof I give, devise and bequeath unto my beloved wife, Mary Lowber Wanamaker." Another third part he gave to his executors and testamentary trustees (his brother, Louis Rodman Wanamaker, and his wife's brother, Samuel Welsh) in trust to pay the income

thereof to his mother, who was at that time sixty-seven years of age, for life, then to his son Rodman, for life, under a spendthrift trust, remainder to Rodman's children and their issue, and in default of issue to such persons and purposes as the son should by his will appoint. The remaining third he similarly gave to his executors and trustees, the income thereof to be paid to testator's brother and two sisters for life, then to their mother for life, then, on a like spendthrift trust, to his son Rodman for life, remainder to his, Rodman's, children and their issue, or, in default thereof, to his appointees.

Testator appointed his brother, Louis Rodman Wanamaker, one of the appellants, guardian for Rodman, 2d, who was then four years old. After the date of the will another son, Thomas, Jr., was born, of whose estate William L. Nevin, another appellant, is guardian. The will provides that future-born children, if any, shall share in the testamentary provisions made for Rodman.

The residuary personal estate amounted to $3,082,000; one-third of it was distributed to the widow and the remaining two-thirds to Louis Rodman Wanamaker, the surviving testamentary trustee, to hold as above outlined.

The controversy at bar concerns the disposition of testator's real property, assessed at $1,890,000, the title thereof, at the execution of the will, being held by the Fidelity Company, in accordance with certain deeds of trust, which Thomas B. Wanamaker had previously caused to be made to it. The real estate in question, with assessed valuations, was as follows: The North American Building, $1,250,000; property at Chancellor and Camac streets, $8,000; 1730 De Lancey street, $7,000; Lyric Theatre, $200,000; Adelphi Theatre, $50,000; 1315 Walnut street, $100,000; 1611 Chestnut street, $100,000; 1900 Rittenhouse square, $125,000; Bass Rocks Farm, $50,000.

The chancellor found, without exception on the part of any appellant, that the above enumerated properties comprised "all" of testator's real estate at the time he made his will, and that they were then held by the trust company, under the above mentioned deeds, to permit the settlor (he paying all taxes, etc.) to use and possess them under a spendthrift trust for life, "and from and immediately after the death of the said Thomas B. Wanamaker, then upon the further trust to hold said premises for such person or persons, and for such uses and purposes as the said Thomas B. Wanamaker by any last will or writing in the nature thereof may appoint," with conditional limitations over, "in default of any such appointment," to children and issue of children; and, for want of children, then to testator's next of kin. On testator's failure to exercise the power, a sale and conversion of the real estate was directed to be made by the trustee, immediately after the settlor's death; and this, it may incidentally be remarked, was not done.

In each of the deeds placing his real estate in trust, Thomas B. Wanamaker had reserved to himself, during life, the right to sell or dispose of the property as he might see fit, with power to change or annul the trusts in relation thereto. The deeds for the major part of the real estate were made during a period covering over four years, commencing June 4, 1895, and ending two months before the birth of testator's son, Rodman.

The court below held that the hereinbefore recited general devise of real estate operated as an exercise of the power of testamentary disposition which Thomas B. Wanamaker had reserved to himself by the deeds of trust, and, therefore, the widow was entitled to an undivided one-third of the property in dispute.

Appellants deny the correctness of the court's conclusion, and insist a contrary intent appears by the seventh clause of the will, which they assert refers to, and recognizes as subsisting vested estates, the interests given to testator's children by the deeds of trust, the

testamentary paragraph relied upon being as follows: "The provision that I have made for my dear son, Rodman Wanamaker, the Second, is not from a lack of parental love, or from disregard of my duty to him, but solely because I am making ample provisions for him in my lifetime."

Appellee's position is, and the court below held, that the clause just quoted does not refer to the real estate set aside by the deeds of trust, but to an entirely different "provision," which testator was then and for some time had been making for his son Rodman, namely, the accumulation of a fund of securities, registered either in the name of the latter or in the father's own name as trustee for him. These securities amounted to $590,000, when the will was written; at testator's death, March, 1908, to $864,000; and at time of hearing, when Rodman was nearing nineteen years of age, to over $1,200,000.

Shortly after the birth of his second son, Thomas B. Wanamaker began similarly to register securities in this boy's name, and, proceeding at the rate of about $100,000 a year, had accumulated $264,000, when death interrupted the process. Thomas, Jr., was three years old when his father died, and the securities held for him had increased at the time of the hearing, when he was fourteen, to about $350,000, and probably will amount to some $500,000 when he attains his majority.

We have had the benefit of two arguments on the various points involved in this case, the first being heard by five members of the court and the second by a full bench; after the assistance thus given by able counsel on both sides, and a study of their 323 pages of printed argument, we are of one opinion that the decision of the learned court below must be sustained. While the case has been presented from every possible angle and a host of authorities cited, yet the view which we reach renders it possible to dispose of this appeal in a comparatively brief manner, considering the extended printed matter before us.

The decision turns upon the proper construction to be given the will of Thomas B. Wanamaker, deceased, particularly the seventh item thereof and those portions which deal with or mention real estate, the first of the latter being the residuary clause, wherein testator expressly undertakes to dispose of all such property—"of what kind or character soever and wheresoever located."

In Peterson's Est., 242 Pa. 330, 338, we recently said: "The rule making a will to speak as though executed immediately before the death of the testator, relates to the effect and operation of the instrument rather than to its construction, and, as regards the intention of the testator, the will is to be construed as of the date of its execution."

We said, at the beginning of this opinion, and now reiterate, that, when testator made his will, the only real estate he owned, possessed or had an interest in (of any "kind or character") was the properties held in trust by the Fidelity Company, to be disposed of "as the said Thomas B. Wanamaker by any last will or writing in the nature thereof [might] appoint"; and he appointed in the manner hereinbefore shown. In other words, when Thomas B. Wanamaker, for reasons of his own, segregated his holdings of realty, by placing them in trust, he expressly, and first of all, reserved to himself the right of actual management or control during life and of testamentary disposition at his death; and since, when testator wrote his will, he had no real estate other than that so held in trust, the general residuary devise of real estate made by him operates, ex necessitate, upon the properties in question, as an exercise of his reserved right of testamentary disposition; and this without regard to the Act of June 4, 1879, P. L. 88.

Both English and American authorities sustain the position just stated. In Pepper's Will, 1 Parsons 436, 442, decided in 1850, President Judge KING held: "Where one possessing a power to dispose of real estate by his last will, and having no other real estate except

that for which he possesses the power, devises generally all his real estate, such devise is deemed to have been made in execution of the power, although such power is not specially referred to, and although the particular real estate embraced in the power is not specially described in the devise." This case has been cited as an authority, upon other points contained therein, by both the Supreme and Superior Courts: see Bethlehem Borough v. Perseverance Fire Co., 81 Pa. 445, 457, and Roger's Est., 31 Pa. Superior Ct. 620, 622.

The principle asserted by Judge KING is recognized by us in Bingham's App., 64 Pa. 345, 349, where, prior to the Act of 1879, we said: "The intention of the donee of a power is the true criterion to determine its execution......and a mode of ascertaining the intention is, when the instrument of execution cannot have any operation except on the ground that the donee intended it to execute his power, as [for example] where there is a power to dispose of real estate and he [a testator who undertakes to will real estate] has none of his own," or, as in the present case, none other than that which he had placed in trust subject to his power of disposal. Also see the reference to the law as it was before the Act of 1879, supra, in Pa. Co.'s Account, 264 Pa. 433, 436a.

Turning to the English cases, in Lake v. Currie, 2 De G., M. & G. 536, 547, where testator, when he made his will, had no real estate to devise except certain properties over which he possessed a power of appointment, Lord ST. LEONARDS said: "It is clearly settled that a general devise or bequest will not, independent of the late statute [which is similar to our Act of 1879], operate as an execution of a power; but it is also settled that where a testator disposes of real estate, not having any other than what is subject to the power, he is in such case to be taken as dealing with that estate." See also Standen v. Standen, 2 Vesey, Jr., 589; and additional authorities could be cited.

Appellants, however, point to item 7 and other sections of the present will, alleging they show it was not Thomas B. Wanamaker's intention to exercise the right of testamentary disposition which he had expressly reserved to himself by the deeds of trust.

In item 9, testator grants his executors and trustees power to lease and manage "any real estate" of which "I may be possessed at the time of my decease," also power to "sell, convey and dispose of any part or all of any real estate of which I may die seized." Appellants contend the phrases, "possessed at the time of my decease" and "of which I may die seized," both prove testator intended to deal in his will with property other than that which he had placed in trust during his life; while, on the other hand, appellee claims that, under the circumstances, these references to real estate are but another indication of testator's intention to exercise his testamentary power of disposition over the trust properties, they being the only real estate owned by him when he made his will.

There is nothing in the words "possessed" or "seized," which in modern times imports legal title, as distinct from beneficial ownership; these words are now frequently used in reference to all sorts of property ownership. As said by the late Judge ASHMAN, in Aubert's App., 109 Pa. 447, 452, the layman is "not apt to draw a nice distinction" between property which he has in fee simple and that over which he possesses the control and testamentary right of disposition. In Howland v. Parker, 200 Mass. 204, 207, Mr. Justice LORING states: "The reason which has led to the establishment of the general rule which now prevails in England......, as well as here, is that, where one has the use and income of land during life with a power of disposition after death, it is natural for him to consider and treat it as his own property; ......not only that, but it is not unnatural for him to speak of it as his own property in making his will." Also see Mortimer v. Mortimer, 1 Ch. (1907)

445, 449, 450; Willard v. Ware, 92 Mass. 263, 268; and, on the meaning of "possessed" and "seized": 35 Cyc. 1371; Reed v. Morrison, 12 S. & R. 18, 21; McNitt v. Turner, 83 U. S. 352, 361-2; Sewall v. Skipwith & Wilmer, 132 Mass. 131; Rhode Island Hospital Trust Co. v. Dunnell, 34 R. I. 394, and Lake v. Currie, supra, at pages 540, 549-50.

We conclude that the references to real estate, so far discussed, are meant to apply to the only property of that kind which testator in any sense owned or possessed at the time the will was written, namely, the real estate held in trust by the Fidelity Company; to rule that he simply intended subsequently acquired real estate, would give a strained and artificial meaning to his language, not justified by the instrument as a whole.

In the seventh item of the will, the one principally relied on by appellants, testator states that he does not devise any part of his "real estate" to his father, because the latter has ample worldly means of his own; here again, under the circumstances, the reference must be taken to mean the real estate held in trust; but the point upon which appellants place their strongest reliance is a subsequent clause (fully quoted in our statement of facts at the beginning of this opinion) where, in speaking of his son Rodman, testator states: "I am making ample provision for him in my lifetime." The word "provision," thus used, appellants contend, refers to the limitation in favor of Rodman contained in the deeds of trust, and that testator's language is equivalent to saying "these trusts, which I created in my lifetime, are to continue after my death as a provision for my son Rodman"; therefore, they argue, the general devise in the residuary clause of the will should not be construed as a testamentary disposition of the real estate covered by such trusts.

We agree with the court below that the language depended upon by appellants was never meant as an expression of testator's intention not to exercise the power,

to dispose of his real estate by will, which in each instance he had so carefully reserved, when creating the trusts. A common-sense reading of the seventh item convincingly shows it to have been inserted for the entirely different purpose of avoiding possible misunderstanding of testator's reasons for disposing of his estate as he did. There is nothing to indicate the language depended upon was meant to annul or defeat the general devise of real estate previously placed in the will; on the contrary, testator's gifts, inter vivos, of the securities accumulated for Rodman, fully and satisfactorily explain the "ample provision" which the will says he is making for his son.

In connection with the conclusion just stated, it may be noted testator does not say "I have made provisions," but "I am making"; and this statement coincides in fact with the creation of the fund of securities, which commenced before the date of the will and continued thereafter—in other words, was in the course of creation at the time of the execution of that document whereas the creation of trusts for real estate had ceased some two years before the will was made, no trust deeds being executed after that date.

To this point, we have disposed of the case without regard to the Act of 1879, supra; but, if that legislation be taken into account, it is plain defendants have not in any measure sustained the burden there imposed. The statute proceeds on the assumption, previously referred to, that an ordinary man considers property, which he may dispose of by will, as his own (Mortimer v. Mortimer, 1 Ch.—1907—445, 449; Aubert's App., 109 Pa. 447, 452); and, shifting the burden of proof theretofore prevailing in such cases, the rule is ordained that he who, in any instance, denies that a general devise executes a general power of appointment, must prove "by what appears on the face of the will" that it was testator's "clearly expressed" intention the devise in question "should not do so": 1 Jarman on Wills (5th ed.) 813; Fidelity, etc., Co.'s App., 108 Pa. 492, 503; Hud-

dy's Est., 236 Pa. 276, 282; Pa. Co.'s Account, 264 Pa. 433, 436.

As said in Willard v. Ware, 92 Mass. 263, 267, the statutory rule just stated is particularly applicable to a case like the present, where "the general power was accompanied by the beneficial use of the property which was the subject of the power, and where the power was created by the testator"; see also Bangs v. Smith, 98 Mass. 270, 273; N. Y. L. Ins. & Tr. Co. v. Livingston, 133 N. Y. 125, 128.

Where it is claimed one or more provisions in a will overcome the rule under discussion—that a general devise is presumed to execute a power of appointment—, if the provisions relied on for that purpose are susceptible of reasonable explanation consistent with the operation of the rule, such explanation should be accepted: Hutchins v. Osborne, 4 Kay & Johnson, 252, and 3 DeG. & J. 142, 144; Scriven v. Sandom, 2 Johnson & Hemings 743, 745; Musgrave v. De Chair, 2 Ch. (1918) 269, 272; Lake v. Currie, 2 De G., M. & G. 536; Theobald on Wills, 241. The relevancy of this principle to the facts before us is apparent. Our review of the present case shows that the statutory burden of proof has not been met by defendants.

In reaching the conclusion that the decree appealed from must be affirmed, we have neither depended upon nor discussed the many facts, aliunde the documents in the case, which prove that testator, during life, both before and after executing his will, referred to, in writing, and repeatedly treated the trust real estate as his own—not like property put aside to be kept intact as a provision for his son; although such facts appear on the record and are used or mentioned in the paper-books on both sides.

As previously said, a host of authorities has been called to our attention, both from Pennsylvania and other jurisdictions; we have examined many and cited some of them, but the views already expressed (on the

facts and principles which govern at bar) render it unnecessary to discuss further those brought forth by appellee or to distinguish those relied on by appellants—it is sufficient to say none of the latter controls this case.

The assignments of error are overruled and the decree is affirmed at cost of appellants.