Barton Trust.

Argued November 24, 1943. Before MAXEY, C. J.;
DREW, LINN, STERN and PATTERSON, JJ.

*William Carson Bodine,* of *Pepper, Bodine, Stokes & Schoch,* with him *Paul Freeman,* of *Freeman, Fox & Steeble,* and *Lloyd J. Schumacker,* for appellants.

*Joseph H. Grubb, Jr.,* of *Newbourg, Grubb & Junkin,* with him *John F. E. Hippel* and *Edmonds, Obermayer & Rebmann,* for appellees.

OPINION BY MR. JUSTICE HORACE STERN, January 3, 1944:

Emily Barton, a native and resident of Philadelphia, executed an irrevocable deed of trust of certain stocks, bonds and mortgages on February 27, 1882. At that time she was twenty-two years of age and unmarried. By the terms of the trust the income was to be paid to herself for life, and upon her death the principal was to be assigned to such persons and for such estates as she by her last will should appoint; in case she did not exercise this power of appointment the principal was to be divided among her children and their descendants per stirpes, or, if she left no surviving descendants, among such persons as would take the estate as her heirs and next of kin had she then died seized and possessed thereof. The trustee was the Pennsylvania Company for Insurances on Lives and Granting Annuities, and the trust assets have ever since been held in its possession in Philadelphia.

In 1890 Emily Barton married Edward Gray Pendleton and moved from Philadelphia, first to Washington, D. C., and then, in 1910, to Atlantic City, New Jersey, where she lived until her death in 1940, her husband having predeceased her. She left no issue surviving.

On January 5, 1933, Mrs. Pendleton, while domiciled in New Jersey, executed a will, and on July 2, 1934,

a codicil, which have been duly probated in Atlantic County, New Jersey, and by which she disposed of her residuary estate as follows: "All the rest, residue and remainder of my estate, real, personal and mixed, of whatsoever nature and wheresoever situate, including all lapsed legacies, lapsed bequests, lapsed sums of every nature and kind arising from any and all personal property, sales of real estate held in my residuary estate, principal to pay annuities in case of death and also including the principal of the trust funds over which I am given the power of appointment by the Will of Susan R. Barton,[1] deceased, and in execution of any and all powers given to me and contained in the said Will of the said decedent, I give, devise and bequeath . . . to the Jefferson Medical College Hospital of Philadelphia . . ."

As Mrs. Pendleton's death terminated the trust which she had created, the trustee filed its account in the Orphans' Court of Philadelphia County, where her next of kin—cousins, and children and grandchildren of cousins—contended that her will did not exercise the power of appointment conferred by the deed of trust and that they were therefore entitled to the principal of the trust estate under the substitutionary provision of the deed. Mrs. Pendleton's individual estate was ample to pay all of her debts, taxes and legacies, and no part of the trust fund was necessary for that purpose. The court held that the residuary clause of the will executed the power of appointment and accordingly it awarded the principal to the Jefferson Medical College of Philadelphia, which owns and operates the Jefferson Medical College Hospital of Philadelphia. From this decision some of the next of kin have appealed.

In order to determine whether the residuary clause constituted an exercise of the power it is first necessary to decide by the law of what state that question is governed. In executing a power of appointment the donee

---

[1] Susan R. Barton was Mrs. Pendleton's grandmother.

disposes of the estate as that of the donor, the appointment being referred back to the instrument which created the power as if it had been actually embodied therein, and it is no doubt because of this principle that it has been uniformly held that the proper and effective exercise of a power of appointment is, in the case of personalty, controlled by the law of the donor's domicile at the time of the creation of the trust: *Bingham's Appeal,* 64 Pa. 345; *Aubert's Appeal,* 109 Pa. 447, 1 A. 336; *Pearce v. Lederer,* 262 Fed. 993, 996; *Russell v. Joys,* 227 Mass. 263, 116 N. E. 549; *Farnum v. Penna. Co. for Insurances on Lives and Granting Annuities,* 87 N. J. Eq. 108, 111, 99 A. 145; *David v. Atlantic County Society for Prevention of Cruelty to Animals,* 129 N. J. Eq. 501, 19 A. 2d 896;[2] *In re New York Life Insurance & Trust Co.,* 209 N. Y. 585, 103 N. E. 315; *Harlow v. Duryea,* 42 R. I. 234, 107 A. 98. See Restatement, Conflict of Laws, sec. 288; 87 U. of Pa. L. Rev. 403, 423; Page on Wills (3d ed.), vol. 4, pp. 726, 727, sec. 1649; Wharton, Conflict of Laws (3d ed.), vol. 2, pp. 1312-1314, sec. 590a; Beale, Conflict of Laws, vol. 2, pp. 1011, 1012, sec. 288.1; Goodrich, Conflict of Laws (2d ed.), pp. 461, 462.

What, then, is the law of Pennsylvania regarding the interpretation of a will which makes a general residuary bequest but does not mention the power of appointment? Prior to the Act of June 4, 1879, P. L. 88, sec. 3, the accepted rule of construction was that a power of appointment would be deemed to be exercised by an instrument only if the instrument referred to the power, or, with sufficient identification, disposed of the subject

[2] This was a decision collateral to the present proceedings. Mrs. Pendleton's executors asked the New Jersey Court of Chancery for a decree construing her will in order to determine whether she had exercised the power of appointment. The court held that this question must be decided according to the law of Pennsylvania, and, since the trustee had submitted it to a court of that state, the courts of New Jersey, even if they had jurisdiction, should not exercise it.

of the power, or would have no operation whatever except as an execution of the power: *Wetherill v. Wetherill*, 18 Pa. 265; *Neill's Estate*, 222 Pa. 142, 70 A. 942; *Hupp v. Union Coal & Coke Co.*, 284 Pa. 529, 534, 131 A. 364, 365. But by that act it was provided that "a bequest of the personal estate of the testator, or any bequest of personal property described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend, as the case may be, which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power unless a contrary intention shall appear by the will." This was embodied, ipsissimis verbis, in section 11 of the Wills Act of 1917, P. L. 403 (which act repealed the Act of 1879). It is clear, therefore, that if the residuary clause of Mrs. Pendleton's will is to be construed according to this statutory provision it operated as an appointment under the power created in the deed of trust. This is especially so because of the identity of donor and donee, by reason of which she would naturally have regarded the trust fund as her own property: see *Thompson v. Wanamaker's Trustee*, 268 Pa. 203, 214, 215, 110 A. 770, 774; *Jackson's Estate*, 337 Pa. 561, 566, 12 A. 2d 338, 341. Nor does the fact that she referred expressly to the power of appointment granted to her by Susan R. Barton's will give rise to an inference that this was the only power she meant to exercise and that her intention with regard to the power conferred by her own deed of trust was contrary to that implied by the Wills Act: *Provident Trust Co. of Philadelphia, Trustee, v. Scott*, 335 Pa. 231, 235, 236, 6 A. 2d 814, 816.

This brings us to the contention upon which appellants mainly rely, namely, that the Wills Act of 1917 is not applicable to Mrs. Pendleton's will because section 24 provides: "Nothing in this act contained shall be construed to apply to the disposition of personal estate by a testator whose domicile at the time of his

death was out of this Commonwealth." It is obvious that if this section were to be taken literally the interpretation of the residuary clause of the will would be subject to the common-law rule of construction according to which it would not constitute an exercise of the power of appointment. That section 24 was never so intended, however, is clearly indicated by two considerations. The first is its history. It is substantially an adoption of section 17 of the Wills Act of April 8, 1833, P. L. 249, as to which it is said in the Reports of the Commissioners on the Civil Code of Pennsylvania, 1831-36, (second report) p. 109: "Personal property is considered as following the person of the owner, and is governed both in regard to succession and transfer, by the laws of the place in which he is domiciliated. In this section, therefore, we have merely declared the existing law of this, and of most other civilized communities." It thus appears that the only purpose of section 17 of the Act of 1833 and section 24 of the Act of 1917 was to affirm the common-law principle that the law of the domicile of a decedent governs the disposition of his personal property. In section 20 of the Intestate Act of April 8, 1833, P. L. 315, it is similarly provided that that act should not be construed to extend to the personal estate of an intestate whose domicile at the time of his death was out of this Commonwealth, and of this section also the Commissioners on the Civil Code of Pennsylvania, 1831-36, (second report) p. 120, say that "The proviso in the last section in this act, like that at the end of the act relating to wills, merely confirms the existing doctrines of the law, and has been added for the purpose of preventing any misconstruction of the general expressions used in the preceding sections." Section 20 of the Intestate Act of 1833 was later embodied verbatim in section 25 of the Intestate Act of 1917, P. L. 429. All of these sections, which purport to make the Wills Acts and Intestate Acts inapplicable to non-

residents, were directed, therefore, to the disposition, either by will or by operation of law, of the personal property owned by such non-residents and not of that as to which their only function is to make an appointment under a power conferred upon them by a Pennsylvania deed or will.

The second consideration which points in this same direction is the fact that in the Wills Act of 1917, in addition to section 11 which deals with the operation of a general bequest in relation to the exercise of a power of appointment, there are many other sections laying down rules for the construction and interpretation of wills; in fact, the act is practically a code governing that entire subject. If, therefore, this statute were to be held inapplicable to a will which, though that of a non-resident, must be construed according to Pennsylvania law, we would have the anomalous result that of the wills subject to interpretation by such law some would be construed according to the provisions of the Wills Act and others, such as that of Mrs. Pendleton, by the rules of the common law. As there is no conceivable reason for such a distinction, the conclusion is irresistible that the Wills Act was intended to apply to *all wills which are governed by Pennsylvania law,* and to be inapplicable only to those which are subject to the law of another jurisdiction.

We summarize our conclusions as follows: (1) The construction of the residuary clause of Mrs. Pendleton's will is controlled by the law of Pennsylvania; (2) the law of Pennsylvania which governs the interpretation of the residuary clause is the Wills Act of 1917; (3) by virtue of that act the residuary clause effectively exercised the power of appointment conferred by the deed of trust; (4) the court below properly awarded the principal of the trust estate to the Jefferson Medical College of Philadelphia.

Decree affirmed; costs to be paid out of the trust estate.