## Jaekel Estate.

434

Argued November 21, 1966. Before BELL, C.J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Howard M. Koff*, with him *Lee A. Jackson, Loring W. Post, I. Henry Kutz*, of the Department of Justice, Washington, D. C., *Richard C. Pugh*, Acting Assistant Attorney General, *Mitchell Rogovin*, Assistant Attorney General, *Meyer Rothwacks*, Acting Chief, Appellate Section, *Merna B. Marshall*, Assistant United States Attorney, of Washington, D. C., and *Drew J. T. O'Keefe*, United States Attorney, for United States of America, appellant.

*Samuel W. Morris*, with him *Morgan, Lewis & Bockius*, for appellee.

OPINION BY MR. JUSTICE JONES, March 14, 1967:

This is an appeal from a decree of the Orphans' Court of Bucks County entered after the first and final accounting in the Estate of Frederic B. Jaekel by the executors of the deceased executrix.

Frederic B. Jaekel, (decedent), a Bucks County resident, died on February 9, 1943, survived by his widow, Edith M. Jaekel, and one daughter, Virginia J. Clough. Frederic B. Jaekel, Jr., decedent's son who was mentioned in decedent's will, had predeceased decedent and, at the time of his death, he left neither wife nor issue.

In decedent's will—dated January 11, 1919, and not thereafter republished[1]—decedent gave to his wife, Edith, a legal life estate in what amounted, by reason of the lapse of the gifts to his son, to all of his property, real and personal, and he conferred upon her the right to possess the estate so given for life without the entry of any security. In addition, decedent gave his wife a general power of testamentary appointment providing that, upon her death, his estate would go to such persons as she might, by her last will, direct and appoint and, upon failure to so appoint, then to his daughter Virginia.

Edith Jaekel, the executrix and life tenant, died on August 21, 1961. By her last will—dated July 30, 1954—she made several specific bequests totalling $19,-000 "free of all transfer inheritance and estate taxes of every kind, which taxes I direct shall be paid from the rest of my estate" and the will further provided: "SIXTH: All the rest, residue and remainder of my estate of every kind, real, personal and mixed, I give, bequeath and devise to my daughter, Virginia Jaekel Clough, in the event that she survives me for a period of twenty days; and in the event that she dies before me or does not survive me for twenty days, I give, bequeath and devise the same to the children of my daughter Virginia living at the time of my death, share and share alike."

The present controversy requires that we determine whether the general power of testamentary appointment given under decedent's will to Edith Jaekel had been exercised by her will. Regardless of the outcome of

[1] Although decedent died February 9, 1943, the general testamentary power of appointment created by his will is considered a pre-1942 power because he died prior to July 1, 1949, without having republished his will subsequent to October 21, 1942. See: §2041(b) (3) of the Internal Revenue Code of 1954, 26 U.S.C. (1958 ed.) §2041.

the controversy, Virginia Clough, decedent's daughter, will take the residue of the estate. The crucial issue is whether she will take the residue of the estate diminished by the amount of a federal estate tax which will attach in the event it is determined that Edith Jaekel by her will *did exercise* the power of appointment.

The decree of the Orphans' Court of Bucks County determined that Edith Jaekel had not exercised, by her will, the power of appointment. To this decree the United States Government filed exception. These exceptions were dismissed and from the final decree then entered the present appeal was taken.

Whether or not Edith Jaekel, by her will, exercised the "pre-1942" general power of appointment given her by decedent is vital in determining the federal tax liability of the estate: Section 2041 (a) of the Internal Revenue Code of 1954 (26 U.S.C. (1958 ed.)) §2041 (a) provides for the inclusion in a decedent's taxable estate of property subject to a power of appointment: ". . . [t]o the extent of any property with respect to which a general power of appointment created on or before October 21, 1942 is exercised by the decedent by will . . . ." It is clear that, in the case of a general power created before October 21, 1942, liability to taxation under the federal statute attaches only if such power was *exercised* by will. Resolution of this issue— whether Edith did *exercise* by will her general power of appointment—depends upon the construction placed upon her will under the laws of Pennsylvania. See: §20.2041-1 (d) of the Treasury Regulations on Estate Tax (1954 Code).

At common law in Pennsylvania there was a presumption that a power of appointment had not been exercised unless the intention of the donee to exercise such power appeared in the will, either affirmatively or by necessary implication. As we stated in *Penn-*

*sylvania Co. for Insurances on Lives and Granting Annuities' Account,* 264 Pa. 433, 436a, 107 A. 840 (1919): "At that time the [common law] rule was that the question was one of intention to be gathered from the language of the will, and unless it either referred to the power, or the property which was the subject of power, or it would have no operation except as an execution of the power, the will would not be treated as an execution thereof: Wetherill v. Wetherill, 18 Pa. 265, 271 [1852]; Bingham's App., 64 Pa. 345, 349 [1890]; Neill's Est., 222 Pa. 142, 145, [70 A. 942 (1908)]." See also: *Barton Trust,* 348 Pa. 279, 282, 283, 35 A. 2d 266 (1944).

This common law rule has been abolished by statute: the Wills Act of 1947, Act of April 24, 1947, P.L. 89 §14(14), 20 P.S. §180.14.[2] This statute presently controls. Section 14(14) provides that: *"In the absence of a contrary intent appearing therein,* wills shall be construed as to real and personal estate in accordance with the following rules: . . . . (14) Power of Appointment. A general devise of the real estate of the testator . . ., shall be construed to include any real estate, . . ., which he shall have power to appoint in any manner he shall think proper, and shall operate as an execution of such power. In like manner, a bequest of the personal estate of the testator, . . ., shall be construed to include any personal estate, . . ., which he shall have power to appoint in any manner he shall think proper, and shall operate as an execution of such power. In like manner, a general pecuniary legacy, when the assets of the individual estate of the testator are not sufficient for its payment, shall, to the extent necessary to make possible the payment of the legacy,

---

[2] This statutory provision is based upon §11 of the Wills Act of 1917, Act of June 7, 1917, P. L. 403, §11, 20 P.S. §223, which was derived from §3 of the Act of 1879, P. L. 88.

be construed to include any estate which the testator shall have power to appoint in any manner he shall think proper, and shall to such extent operate as an execution of such power." (Emphasis supplied). If the donee has a *general* power of appointment, the effect of the statute is to create a presumption that a general devise of the realty or a bequest of the personalty of the donee operates as an execution of the general power of appointment.[3]

The burden of demonstrating with clarity that the donee-testator has manifested *a contrary intent in the will* is placed upon those who challenge the exercise of the general appointive power: *Thompson v. Wanamaker's Trustee,* 268 Pa. 203, 214, 110 A. 770 (1920).

Moreover, this "contrary intent" must "appear" in the will itself.[4] In *Provident Trust Co. of Philadelphia v. Scott,* 335 Pa. 231, 6 A. 2d 814 (1939), this Court stated: "This [the 1917 statutory] presumption may be overcome, moreover, only by the presence in the will of language clearly indicative of a contrary dispositive intent, or of a form or method of disposition inconsistent with an exercise of the power. *The contrary intent*

---

[3] Under 1879 statute, see: *Aubert's Appeal,* 109 Pa. 447, 1 A. 336 (1885) ; *Dillon v. Faloon,* 158 Pa. 468, 27 A. 1082 (1893) ; *Huddy's Estate,* 236 Pa. 276, 84 A. 909 (1912) ; *Penna. Co. for Insurance on Lives and Granting Annuities' Account,* 264 Pa. 433, 107 A. 840 (1919). Under 1917 statute, see: *Blackburne's Estate,* 290 Pa. 55, 138 A. 538 (1927) ; *Morris's Account,* 298 Pa. 540, 148 A. 843 (1930) ; *Noble's Estate,* 344 Pa. 81, 23 A. 2d 410 (1942) ; *Provident Trust Co. v. Scott,* 335 Pa. 231, 6 A. 2d 814 (1939) ; *Barton Trust,* 348 Pa. 279, 35 A. 2d 266 (1944) ; *Jull Estate,* 370 Pa. 434, 88 A. 2d 753 (1952). Under 1947 statute, see: *Golden Estate,* 15 Pa. D. & C. 2d 120 (1957) ; *Jeffers Estate,* 394 Pa. 393, 147 A. 2d 402 (1959). See also: *Keating v. Mayer,* 236 F. 2d 478 (1956) ; *Mearkle Estate,* 23 Pa. D. & C. 2d 661 (1960).

[4] The statutory presumption applies even though the will is executed prior to the execution of the instrument giving the power of appointment. *Blackburne's Estate,* 290 Pa. 55, 58, 138 A. 538 (1927) ; *Morris's Account,* 298 Pa. 540, 545, 148 A. 843 (1930).

*must appear from the will itself, not from extraneous circumstances.* This appears from the words used in the statute and from the decisions which have construed it: [citing authorities]." (at p. 235) (Emphasis supplied). In *Thompson v. Wanamaker's Trustee,* 268 Pa. 203, 214, 110 A. 770 (1920), it was stated: ". . . the rule is ordained that he who, in any instance, denies that a general devise executes a general power of appointment, must prove 'by what appears on the face of the will' that it was testator's 'clearly expressed' intention the devise in question 'should not do so'. [citing authorities]." From an examination of the statutory language it is clear beyond question that the "contrary intent" required to rebut the statutory presumption of the exercise of the power of appointment must appear in the will itself; unless within the four corners of the will such "contrary intent" can be demonstrated, application of the statutory presumption is mandated.

The rationale adopted by the court below—and as urged by Mrs. Clough—is that: (a) the four legacies, totaling $19,000, (Paragraphs Second, Third, Fourth and Fifth of the will) were intended to be paid out of Mrs. Jaekel's own estate and, since it was not shown that assets of the individual estate of Mrs. Jaekel were not sufficient for payment of these legacies, the last sentence of §14(14) is inapplicable; (b) that the direction of Mrs. Jaekel that these legacies be "free of all transfer inheritance and estate taxes of every kind" indicates that she was thinking in terms of her own individual estate since, if she intended that these four legacies be paid by decedent's estate rather than her own estate, such taxes would not be taxable to her estate but to the estate of the creator of the power *(Powell Estate,* 417 Pa. 164, 207 A. 2d 857 (1965)); (c) that, since Mrs. Jaekel in Paragraph Second of the will directed that the taxes on the $1000 legacy be paid from the rest of "my estate", the words "my estate",

contained in the residuary clause, must be construed in the same manner as the words "my estate" in the Second Paragraph of the will under the rule of testamentary construction that "words occurring more than once in a will shall be presumed to be used always in the same sense, unless a contrary intention appear by the context or unless the words be applied to a different subject" and, therefore, when Mrs. Jaekel made a gift of "my estate" in the residuary clause she referred to her own individual estate and not to her individual estate plus the estate of the decedent. The court below concluded that such internal evidence in this will indicated a "contrary intent" in the statutory sense or at least, an ambiguity or uncertainty existed in the will.

In corroboration of such an interpretation of the will, Mrs. Clough offered certain oral testimony to which the Government objected. Such oral testimony was that of the scrivener of the will as to statements made by Mrs. Jaekel to him at the time the will was being prepared. According to the scrivener of the will, Mrs. Jaekel believed that nothing remained to be done in decedent's estate, that she had merely a life estate therein and, thereafter, everything belonged to Mrs. Clough and that Mrs. Jaekel was very conscious of tax problems and expressed her desire to adjust her affairs to mitigate so far as possible any such tax problems. While agreeing that such extrinsic evidence should be regarded as incompetent to furnish the "contrary intent" statutorily mandated, the court below, nevertheless, held that such extrinsic evidence was competent for the purpose of providing guidance and assistance in ascertaining that which Mrs. Jaekel meant by her testamentary language. In permitting such extrinsic evidence to be received of record and considered the court below fell into error.

We must agree that, despite the clear language of the statute, a review of some of our case law indicates that extrinsic evidence has been considered admissible to demonstrate a "contrary intent" or an intent upon the part of the donee-testator not to exercise the power of appointment.

In *South's Estate*, 248 Pa. 165, 93 A. 954 (1915), the Court considered that testimony to the effect that the donee-testator had no estate other than that which was provided in the will of the donor of the power and that the donee knew this when he gave instructions to the scrivener for drawing his will was held admissible "as an aid in construing the will."[5] In *Thompson v. Wanamaker's Trustee*, 268 Pa. 203, 110 A. 770 (1920), the Court apparently countenanced the admission of extrinsic evidence that donee-testator had made "provision" other than by his will for a beneficiary in order to determine whether the donee-testator had intended not to exercise a power of appointment. In *Jackson's Estate*, 337 Pa. 561, 12 A. 2d 338 (1940), the Court considered extrinsic evidence as to the value of the donee-testatrix' estate exclusive of the estate over which she had a power of appointment, that one of the estates over which she had the power of appointment had been created out of her own funds and the relationship of the donee-testatrix to the beneficiaries. In *Wilson's Estate*, 57 Pa. D. & C. 612 (1946), Judge (later Justice) LADNER, even though he recognized the *existence of a conflict between the ruling in Provident Trust Co. v. Scott*, 335 Pa. 231, 6 A. 2d 814 (1939) which restricted evidence of a "contrary intent" to the will itself and the rulings in *Jackson's Estate*, supra, and *South's Estate*, supra, which permitted certain evi-

---

[5] In *South's Estate*, the Court relied upon *Hermann's Estate*, 220 Pa. 52, 58, 69 A. 285 (1908). *Hermann's Estate* did not involve a power of appointment or any statutory provision providing that a "contrary intent" must appear in the will.

dence to be considered outside the language of the will, nevertheless, in reliance on *South's Estate,* supra, did consider evidence that the donee of the power knew of her possession of the power, that she knew that the bequests in the will were in excess of the value of her own individual estate and that the donee intended to benefit the legatees for favors rendered to her in her lifetime for which she had not had the ability to pay. In *Rush Estate,* 6 Chester Co. Rep. 188 (1954), the court permitted evidence of the donee-testatrix' instructions to the scrivener of the will, such as her disclaimer of any knowledge of any power to appoint,[6] her belief that her son upon her death would automatically receive the res of the original trust and her purpose to equalize the life income to her husband and her son. Moreover, the court also gave consideration to the impact of federal estate taxation depending on the result reached.[7] If *Rush Estate* is correct then the extent to which extrinsic evidence is admissible to show a "contrary intent" would appear to be limitless.

In view of the apparent conflict between that which the statute has mandated as the source from which a "contrary intent" is to be ascertained as this Court so unequivocally determined in *Scott,* supra, and that which this Court permitted in *South's Estate,* supra, *Thompson,* supra, and *Jackson's Estate,* supra, it would appear necessary that a guideline be established to determine *when,* if at all, evidence outside the language

----

[6] In the opinion of the writer of this opinion consideration of this evidence is contraindicated by the rationale of *Blackburne's Estate,* supra, and *Morris's Account,* supra.

[7] In doing so the court relied on *Harris Estate,* 351 Pa. 368, 41 A. 2d 715 (1945). *Harris Estate* was inapposite in *Rush Estate,* supra, and is not presently apposite. In *Harris Estate,* supra, this Court, by a 4-3 vote, held that the possibility of federal tax liability was a circumstance to be determined in ascertaining a testator's intent generally.

of the will is to be considered in finding a "contrary intent" to rebut the statutory presumption and *what* evidence may be considered.

Other jurisdictions have been presented with this problem. In *Rettig v. Zander*, 364 Ill. 112, 121, 4 N.E. 2d 30, 34 (1936), it was held that testimony as to the intent of the donee-testator, separate and apart from the intent conveyed by the language of the will, should not be admissible. However, while parol evidence is not admissible to show what the donee-testator intended to write, such evidence may be admitted where its effect is merely to explain or make certain what was written. Facts such as the nature, condition and the extent of the donee-testator's individual property and the relations between the donee-testator, his family and named beneficiaries were ruled admissible. See also: *Northern Trust Company v. Moscatelli*, 54 Ill. App. 2d 316, 203 N.E. 2d 447 (1964); *Northern Trust Co. v. Cudahy*, 339 Ill. App. 603, 91 N.E. 2d 607 (1950). In *Boston Safe Deposit & Trust Co. v. Prindle*, 290 Mass. 577, 195 N.E. 793 (1935), it was held that declarations of a donee-testator are inadmissible, but that circumstances existing and known to the donee-testator and the fact of his knowledge of them may be shown. The conduct of the donee-testator and even the declarations of the donee-testator may be shown if the purpose is not to directly prove the donee-testator's intent but to show facts relevant to his knowledge and a state of feelings toward or relation to his family and beneficiaries.[8]

The law in New York is more analogous in this area to that in our Commonwealth. The New York statute provides in pertinent part: "Personal property embraced in a power to bequeath, passes by a will or

---

[8] Those jurisdictions do not have a statutory direction as we do in Pennsylvania.

testament purporting to pass all the personal property of the testator; unless the intent, that the will or testament shall not operate as an execution of the power, appears therein either expressly or by necessary implications." In *In Re Deane's Will*, 4 N.Y. 2d 326, 175 N.Y.S. 2d 21 (1958), the Court of Appeals, construing the provisions of the New York statute, held that the presumption provided by that statute could be rebutted "only by the express language or the necessary implication of the express language of the will itself." (p. 332) and the Court refused to permit consideration of any evidence *dehors* the will as to the donee's statements of intent or the family background and proof of the relations between the party, stating: ". . . the proof to rebut the statutory presumption must be found in the will itself, as the statute expressly says, and there was nothing in this will to that effect." (p. 333). See also: *In Re Estate of Hopkins*, 46 Misc. 2d 273, 259 N.Y.S. 2d 565 (1964).

The language of §14 (14) of the Wills Act, supra, is clear beyond question. Therein the legislature has provided *explicitly* that the statutory presumption shall prevail unless a contrary intent appears in the will itself. Under this legislative mandate we seek to find a contrary intent not in any facts or circumstances outside the will itself; our search is limited to the four-corners of the will. By reason of the terms of this statute we are confronted with a situation where we cannot adopt the usual "arm chair approach" in the construction of the will.

In *South's Estate*, supra, the outside evidence should not have been considered; however, the conclusion which the Court reached was consonant with the provisions of the statute. In *Thompson*, supra, the Court expressly stated that, in arriving at its conclusion, it had not depended on extrinsic evidence presented of record. (p. 215). In *Jackson's Estate*, supra, the result reached

could and should have been accomplished without resort to evidence *dehors* the will.

The very able judge in the court below did consider extrinsic evidence as an aid in construction of the instant will; in this respect the court below erred.

We have carefully considered the tax clauses and the legacy-bestowing provisions of this will to determine whether they furnish internal evidence sufficient to rebut the statutory presumption. We conclude that those testamentary provisions do not overcome the presumption that in this will Mrs. Jaekel exercised her power of appointment.

Three legislatures—1879, 1917 and 1947—have seen fit to impose the statutory presumption; the wisdom thereof is a matter for the legislature, not for this Court. The instant statute *unequivocally* dictates that the source of an intent on the part of the donee of a power not to exercise a power of appointment be the language and provisions of the will; in the instant will such intent is not to be found, either expressly or by necessary implication. We, therefore, must apply the statutory presumption that Mrs. Jaekel in her will did exercise her power of appointment.

Decree reversed. Estate to pay costs.