## Golden Estate

*J. Weinman Cratty*, for accountant.

*Bresci R. P. Leonard*, guardian ad litem.

*William H. Eckert*, for legatee.

RAHAUSER, J., October 18, 1957.—Charles H. Golden during his lifetime created an inter vivos trust. The income was to be paid to his widow; upon her death, half of the principal was to be distributed to his daughter, Delia Golden, and at her death, half of the principal of the trust was to be distributed as Delia Golden should appoint by will.

Charles Golden and his wife having died, Delia Golden died May 14, 1956, leaving three adopted children. Dee Golden Tunstall was one of the daughters.

By the fourth paragraph of Delia Golden's will, dated January 8, 1951, she bequeathed to her daughter, Dee Golden Tunstall, the following:

"FOURTH: I give and bequeath the sum of Two Thousand Five Hundred Dollars ($2,500.00) to my adopted daughter, DEE GOLDEN."

All parties in interest have filed a stipulation to the effect that there is not sufficient money in the estate of Delia Golden, deceased, to pay said legacy, that if the legacy is to be paid, it can only be paid from that portion of the trust created by decedent's father, over which she had the power of appointment.

As to the amount of the estate of Delia Golden at the time the will was executed, the account of The Fidelity Trust Company, trustee, shows that the trustee made numerous advances to Delia Golden from the trust, that one of these advances, $4,392.46, was made on January 23, 1951.

At the audit of the above accounts, the auditing judge held that the $2,500 bequeathed by Delia Golden to her daughter, operated pro tanto, as an exercise of the power of appointment, which Delia Golden had in the said trust.

The guardian ad litem, appointed for the minors who had an interest in the said estate, filed exceptions to the decree, alleging that the will indicated a contrary intent to this disposition, that the will of Delia Golden and the codicil thereto indicates that decedent did not intend the daughter's legacy to be paid from her father's trust estate. The will dated January 8, 1951, and the codicil dated April 20, 1956, that the guardian ad litem cites are as follows:

"FIFTH: All the rest and remainder of my property and estate, personal and real, including all of the rest

of the property in the trusts mentioned in the Third clause of this, my will, over which I have power of testamentary appointment, I give, bequeath, and devise to my three (3) adopted children named below in the proportions indicated by the number of shares after the name of each:

"DEE GOLDEN, six (6) shares
SHERRY MICHELE GOLDEN, five (5) shares—
KENNETH REED GOLDEN, four (4) shares."

The codicil, dated April 20, 1956, provides as follows:

"THIRD: I cancel items Fifth of my will, and in lieu thereof, I substitute the following:

"FIFTH: All the rest and remainder of my property and estate, personal and real, including all of the rest of the property in the trusts mentioned in the Third item of my will over which I have power of testamentary appointment, I give, bequeath, and devise to my three (3) adopted children named below in the proportions indicated by the number of shares set after the name of each:

"DEE GOLDEN TUNSTALL—three (3) shares
SHERRY MICHELE GOLDEN—six (6) shares
KENNETH REED GOLDEN—six (6) shares."

The guardian ad litem contends that inasmuch as decedent decreased the shares of Dee Golden Tunstall in the codicil, and that her legacy was not mentioned therein, that decedent thereby indicated an intent not to pay the legacy from the appointed estate.

The court does not agree with this contention, and is of the opinion that the exceptions filed by the guardian ad litem must be dismissed.

The Wills Act of April 24, 1947, P. L. 89, by its section 22, is expressly made applicable "to the wills of all persons dying on or after that day," viz., January 1, 1948, and consequently the Wills Act of 1947 is appli-

cable to the will of Delia Golden who died in 1956. Section 14 of the Wills Act of 1947 contains a collection of legislative rules for the interpretation of wills "in the absence of a contrary intent appearing therein". Subdivision (14) of said section 14 relates to powers of appointment. The last sentence of said section 14 (14) is specifically applicable to this case. It reads as follows:

"In like manner, a general pecuniary legacy, when the assets of the individual estate of the testator are not sufficient for its payment, shall, to the extent necessary to make possible the payment of the legacy, be construed to include any estate which the testator shall have power to appoint in any manner he shall think proper, and shall to such extent operate as an execution of such power."

In the instant case Delia Golden has bequeathed a general pecuniary legacy to her daughter, Dee, but there are no assets in Delia Golden's individual estate available to pay any part of this legacy. Delia, however, had a general power of appointment over one-half of two trusts created by her father, either of which is adequate to pay this legacy. This case therefore comes directly within the purpose of section 14(14) of the Wills Act of 1947.

The Supreme Court has expressly decided that the contrary intent referred to in the Wills Act must be clearly established. In Provident Trust Company of Philadelphia v. Scott, 335 Pa. 231, the Supreme Court in holding that a power of appointment was exercised by a residuary clause though the latter did not specifically refer to the power of appointment, said anent section 11 of the Wills Act of 1917, which was the prototype of section 14(14) of the Wills Act of 1947, pages 234-35:

"What this statute does, in the absence of a specific and unmistakable intention of the testator to exercise

the power, by express reference in his will, is to create a presumption of his intention to execute it, which is merely another aspect of the accepted rule that a testator is 'presumed to intend to dispose of everything within his control, irrespective of the verbal form of his testament': Garman v. Glass, 197 Pa. 101, 105, 46 A. 923. This presumption may be overcome, moreover, only by the presence in the will of language clearly indicative of a contrary dispositive intent, or of a form or method of disposition inconsistent with an exercise of the power. The contrary intent must appear from the will itself, not from extraneous circumstances."

Certainly there is nothing in the will or codicil of Delia Golden which clearly indicates that she intended that the $2,500 bequeathed to her daughter was not to be paid out of that share of her father's trusts over which she had the power of appointment.

The fact that decedent did not mention her power of appointment in her father's trust in the same paragraph wherein she made the bequest to her daughter, Dee, is similar to the same point raised in Provident Trust Company of Philadelphia v. Scott, supra.

The same feature was present, but was held to be insufficient to overcome the legislative presumption that the power of appointment had been exercised. To that effect our Supreme Court said, page 235:

"This reasoning is not sufficient to overcome the presumption established by the statute. We cannot hold that Miss Scott's failure to mention the other power amounts to an 'appearance' in the will of an intention on her part not to exercise that power. The evidence is of too negative a character to establish the statutorily required 'contrary intention.' The mere failure to make express reference to a power a testatrix possesses falls short of proving *an intention not to execute it.*"

The language of item fifth of Delia's will demonstrates that she regarded the share of the trusts created

by her father over which she had power of appointment as constituting part of her own property and estate. In item fifth of her will Delia said: "All the rest and remainder of my property and estate, personal and real, including all of the rest of the property in the trusts mentioned in the THIRD clause of this my will over which I have power of testamentary appointment." In effect she there said that "my" property and estate includes whatever remains in the trusts created by my father over which I have power of appointment. If she regarded what remained in those trusts subject to her appointment as part of her own property and estate, she naturally also expected and intended that what remained in said trusts subject to her power of appointment could and should be utilized to pay the legacy of $2,500 which she bequeathed to her daughter, Dee. If she had intended differently, i.e., that said legacy to her daughter should be payable only out of her own meager assets, and not out of the share of the trusts created by her father over which he gave her power of appointment, she could easily have said so, and presumably would have done so.

Another consideration which leads to the same conclusion, i.e., that Delia intended the legacy to her daughter to be payable out of Delia's appointive estate, is the fact the Delia must have known that the legacy could not be paid out of her own individual assets, but only out of her appointive estate. That is the only logical deduction from the facts that Delia had obtained advances, which she acknowledged in the third article of her will to have been "at my insistence", from the corpus of the trusts between April 11, 1939, and September 9, 1955, aggregating $35,169.41 and left personal property which is deficient to pay her debts and expenses. That Delia was in dire financial straits at the very time when she made her will on January 8, 1951, is proved beyond peradventure by the fact that

an advance from the trustee of $4,392.46 was made to her on January 23, 1951, just 15 days after she had executed her will containing the legacy to her daughter. Decedent certainly would not execute a solemn will bequeathing te $2,500 to her daughter when she knew that no such legacy could be paid out of her individual estate.

The importance of the fact that there is nothing in the individual estate of Delia Golden out of which to pay the $2,500 legacy bequeathed by her to her daughter Dee, is shown by South's Estate, 248 Pa. 165, in which our Supreme Court, in holding that pecuniary legacies exercised a power of appointment though not specifically referred to, said, page 168:

"The fact that there is nothing with which to pay the pecuniary legacies in the will of George S. Robb, unless the fund, which is the subject of the power, is drawn upon, justifies a strong presumption that he intended to exercise his power of appointment."

A decree will be drawn in accordance with this opinion.