T.C. Memo. 2004-91

UNITED STATES TAX COURT

ESTATE OF SARAH W. GREVE, DECEASED, CHARLES E. GREVE & DAVID R.
GREVE, CO-EXECUTORS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16020-02.          Filed April 5, 2004.

Louis R. Salamon, for petitioner.

Julia L. Wahl, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

CHIECHI, Judge:  Respondent determined a deficiency of

$163,677.55 in Federal estate tax (estate tax) with respect to

the estate (estate) of Sarah W. Greve (decedent).  The issues for

decision are:

(1) Is certain property with respect to which decedent had a

power of appointment at the time of her death includible in decedent's gross estate under section 2041(a)(1)?[1]  We hold that it is.

(2) Is certain property with respect to which decedent had a power of appointment at the time of her death includible in decedent's gross estate under section 2041(a)(2)?  We hold that it is.

FINDINGS OF FACT

Most of the facts have been stipulated and are so found.

Decedent was a resident of Pennsylvania at the time of her death on December 27, 1998.

At the time the petition was filed, Charles E. Greve and David R. Greve, decedent's sons and the co-executors (executors) of the estate, had a mailing address in Pittsburgh, Pennsylvania.

On July 29, 1933, Sarah S. Wright (Ms. Wright), decedent's grandmother, executed her last will and testament (Ms. Wright's will) under which Ms. Wright, inter alia, created a testamentary trust (testamentary trust).  Ms. Wright's will provided in pertinent part as follows:

> SECOND:  I give and bequeath all of the bonds and all of the corporate stocks which I may own at the time

---

[1]All section references are to the Internal Revenue Code (Code) in effect on the date of decedent's death.  All Rule references are to the Tax Court Rules of Practice and Procedure.

of my death to THE UNION TRUST COMPANY OF PITTSBURGH,[2] IN TRUST, NEVERTHELESS, for the following uses and purposes to-wit:

To hold, manage, invest, re-invest, and keep invested the same in such securities as the Trustee in its sole discretion may deem fit without being limited to those investments known as Trust Investments under the Laws of the Commonwealth of Pennsylvania, and less the expenses incident to the management of the trust and a reasonable compensation to the Trustee, to pay over the net income in equal shares to my children, JOHN, HESTER, CLARA and ROBERT for and during the full term of their natural lives.  Upon the death of any of my said children leaving issue, him or her surviving, the income arising from that portion of th[e] [p]rincipal to which said child [was] entitled to receive the income at the time of his or her death shall be paid over equally among such surviving issue for and during the full term of their natural lives * * * [.]  Upon the death of any issue of a deceased child of mine while such issue may be entitled to receive a portion of income herefrom, the principal of the fund represented by that portion of the income which such issue was receiving at the time of his or her death shall be paid over free and discharged of any trust to such persons and in such manner as he or she shall by his or her Last Will and Testament designate and appoint, and in the absence of such testamentary disposition it shall be paid over to those persons who are then his or her heirs under the then existing Intestate Laws of the Commonwealth of Pennsylvania.

On November 20, 1933, Ms. Wright died survived by four children, one of whom was Robert Wright (Mr. Wright), decedent's father.  On November 6, 1974, Mr. Wright died survived by six children (collectively, Mr. Wright's children).[3]  Between the

---

[2]At a time not disclosed by the record, Mellon Bank, N.A., became the successor to the Union Trust Company of Pittsburgh.

[3]Mr. Wright's children are decedent, Elizabeth Wright Anderson, Ann Wright Curran, Patricia Wright Caldwell, Nancy Roberts Wright, and Robert McEldowney Wright, Jr.

date of Ms. Wright's death and the date of Mr. Wright's death, Mr. Wright received a one-fourth share of the income from the testamentary trust.  Between the date of Mr. Wright's death and the date of decedent's death on December 27, 1998, decedent received a one-sixth share of the income from that trust.

On May 11, 1976, Hester M. Wright (Hester Wright), one of decedent's aunts, executed a deed of trust (deed of trust) under which she created an inter vivos trust (inter vivos trust).  The deed of trust provided in pertinent part as follows:

> HESTER M. WRIGHT, of the City of Pittsburgh, Allegheny County, Pennsylvania, as the Settlor, and MELLON BANK, N.A., a national banking association authorized to engage in trust business in the Commonwealth of Pennsylvania, as the Trustee, hereby agree as follows:
>
> ONE:    The Settlor hereby transfers and delivers to the Trustee * * * [certain property] together with all her interest therein.  The Trustee shall hold said property, together with any additions thereto as hereinafter provided, as a Trust Estate, shall invest and reinvest the same and shall distribute the net income (hereinafter called "Income") and principal as set forth in the following provisions.
>
> (A) During the Settlor's lifetime, the Trustee shall pay the Income quarter-annually to her or for her benefit and shall also pay to her such sums from principal as she may direct in writing * * *
>
> (B) Upon the Settlor's death, the Trustee shall pay directly to the taxing authorities or through the personal representative of her estate all estate, inheritance and other taxes in the nature thereof * * *.  The Trustee shall also pay to the Settlor's personal representative or shall expend directly, from assets other than the proceeds of insurance, such sums as said personal representative shall certify as necessary to supplement the Settlor's probate estate in

order to pay debts, funeral expenses, legacies and administration expenses.  Subject to such payment, the trust shall continue as follows:

(1) During the lifetime of the Settlor's sister, CLARA E. WRIGHT, if she survives [t]he Settlor, the Trustee shall pay the Income quarter-annually to her or for her benefit * * *

(2) Upon the death of the survivor of the Settlor and her said sister, the principal shall be divided into six equal shares for the Settlor's nieces and nephew, ELIZABETH WRIGHT ANDERSON, SARAH WRIGHT GREVE, ANN WRIGHT CURRAN, PATRICIA WRIGHT CALDWELL, ROBERT McELDOWNEY WRIGHT, JR., and NANCY ROBERTS WRIGHT, and each share shall be held as a separate trust.  If any of them is not then living, his or her share shall be distributed as is hereinbelow provided.

(a) During the lifetime of each of them, the Trustee shall pay the Income from his or her trust quarter-annually to or for the benefit of said niece or nephew, and if the Trustee considers the Income to be insufficient, in view of other funds readily available for such purpose of which it has knowledg[e] to provide for the welfare and comfortable support of said niece or nephew and his or her family, including educational and funera[l] expenses, the Trustee is authorized in its discretion to use such sums from principal as it deems advisable therefor.  In addition, the Trustee shall pay to said niece or nephew such sums from prin[cipal] as he or she may request in writing, not to exceed FIVE THOUSAND ($5,000) DOLLARS in any one calendar year[4] on a noncumulative basi[s.]

On July 21, 1980, Hester Wright died.  On a date not dis-

closed by the record on or after July 21, 1980, Clara E. Wright

(Clara Wright), one of decedent's aunts, disclaimed her interest

---

[4]The deed of trust granted to decedent and Mr. Wright's other children the power of appointment with respect to an amount not to exceed $5,000 from the principal of the inter vivos trust in any one calender year.  For convenience, we shall hereinafter refer to that amount as $5,000.

in the inter vivos trust.

On December 31, 1981, Mellon Bank, N.A., the trustee under the deed of trust, and Mr. Wright's children, who were Hester Wright's nieces and nephew, entered into an agreement to amend the inter vivos trust (agreement to amend the inter vivos trust). That agreement provided in pertinent part as follows:

> WHEREAS, Hester M. Wright, settlor under the Deed of Trust died July 21, 1980; and
>
> WHEREAS, Clara E. Wright, first life tenant under the Deed of Trust, disclaimed all of her interest as such life tenant, thereby accelerating the interests of the Beneficiaries hereto as successor life tenants; and
>
> WHEREAS, the Beneficiaries desire that during the term of this Agreement the Trustee hold and administer the entire trust estate as one fund, rather than dividing the same into six separately held and administered trust funds, one for each Beneficiary.
>
> NOW, THEREFORE, the parties, intending to be legally bound hereby, agree as follows:
>
> 1. Notwithstanding the provisions of Article ONE (B)(2) that, on the death of the Settlor and her sister, the principal of the trust estate shall be divided into six equal separate trusts, the Trustee shall during the continuance of this Agreement hold, invest and reinvest and otherwise administer the trust estate as one fund, distributing the net income in equal shares directly to the six Beneficiaries and not through the separate trusts.
>
> 2. Notwithstanding the provisions of Article ONE (B)(2)(a), the Trustee shall not, during the continuance of this Agreement, (i) make any distribution of principal to any Beneficiary pursuant to its discretionary powers in this subparagraph or (ii) make any distribution of principal to any Beneficiary pursuant to such Beneficiary's power to request sums from principal not to exceed $5,000 in any one calendar year, except that at the request of the Attorney-in-Fact

(hereinafter appointed), the Trustee shall make equal distributions to each Beneficiary of such sums from principal as shall not exceed $5,000 to each Beneficiary in any one calendar year.

3.  By the execution of this Agreement, each Beneficiary hereby appoints ROBERT McE. WRIGHT, JR.[5] (the Attorney-in-Fact) as her [sic] attorney-in-fact under the Deed of Trust and hereunder:

>    (a)  to take any actions and make any decisions contemplated to be taken or made by the Beneficiaries and to communicate the same to the Trustee;

>    (b)  to communicate to the Trustee the investment objectives of the Beneficiaries with respect to the investment of the principal of the trust fund;

>    (c)  to request on behalf of the Beneficiaries equal distributions from principal not to exceed $5,000 per Beneficiary in any one calendar year, as contemplated in paragraph 2 hereof; and

>    (d)  generally to make representations, give consents and act on her [sic] behalf in all dealings with the Trustee under the Deed of Trust and hereunder.

Each Beneficiary further agrees that this appointment of the Attorney-in-Fact shall remain in full force and effect until written notice of revocation is given to the Trustee or until this Agreement is terminated as hereinafter provided.

4.  This Agreement shall terminate upon the happening of any of the following events:

>    (a)  the death of any Beneficiary;

>    (b)  written notice to the Trustee that any

---

[5]We presume that Robert McE. Wright, Jr., is Robert McEldowney Wright, Jr., decedent's only brother and one of the beneficiaries under the inter vivos trust.

> > Beneficiary desires to terminate the Agreement;
>
> > (c) written notice by the Trustee to the Attorney-in-Fact that it desires to terminate the Agreement;
>
> > (d) revocation by any Beneficiary of the appointment of the Attorney-in-Fact.

If the Agreement shall be terminated by the death of, notice of termination by, or revocation of appointment of Attorney-in-Fact by any Beneficiary, the remaining Beneficiaries may enter into a new agreement with the Trustee upon the terms herein set forth for the investment, reinvestment and administration of their trusts as one fund as herein provided. The share of the Beneficiary dying, giving notice of termination or revoking the appointment of Attorney-in-Fact, shall be withdrawn from this Agreement and shall be administered, distributed or otherwise disposed of according to the terms of the Deed of Trust. Also upon final termination of the Agreement (or any new agreement referred to above), the trust fund administered under this Agreement (or any new agreement) shall be divided according to the terms of the Deed of Trust as if this Agreement had not been entered into, it being understood that this Agreement is intended only to relate [to] the administration and management of the trust estate and not to affect the substantive rights of any distributees under the Deed of Trust. The termination of the Agreement shall not be an occasion requiring the Trustee to file an account covering its administration of the trust estate pursuant to this Agreement.

5. This Agreement shall not affect the Deed of Trust in any other respect or the Trustee's ultimate duty to account. During the time this Agreement is in effect, the Trustee's compensation shall reflect the fact that the trust estate is being administered as a single account.

Between the date on which Clara Wright disclaimed her interest in the inter vivos trust and the date of decedent's death on December 27, 1998, decedent received a one-sixth share of the income from the inter vivos trust.

On August 16, 1993, decedent executed her will (decedent's will).  Decedent's will provided in pertinent part as follows:

> I, SARAH W. GREVE, of Pittsburgh, Pennsylvania, make, publish and declare this to be my last Will, hereby revoking all prior wills.

> FIRST:    I give to my children living at my death, so much of my tangible personal property (together with any insurance thereon) as they may select in approximately equal shares.  If any dispute should arise among them about such selection, my Executors shall have final authority to decide the same.  Any such property not so selected, shall be sold and the proceeds added to my estate hereinafter disposed of.

> SECOND:    I give my remaining entire estate in equal shares to my children, per stirpes, subject to the minority [relating to beneficiaries under the age of 18] provisions hereinafter provided.

When decedent died on December 27, 1998, she was survived by six children.

At a time not disclosed by the record after decedent's death and before September 24, 1999, Mellon Bank, N.A., distributed decedent's one-sixth share of the principal of the testamentary trust to decedent's children.  At a time not disclosed by the record after decedent's death and before September 24, 1999, Mellon Bank, N.A., distributed decedent's one-sixth share of the principal of the inter vivos trust to decedent's children.

On January 4, 1999, the Register of Wills of Allegheny County, Pennsylvania, admitted decedent's will to probate.  On that date, the executors received letters testamentary with respect to decedent's estate.

On September 24, 1999, the executors of decedent's will filed in the Orphans' Court of Allegheny County, Pennsylvania, what is identified as a disclaimer (purported disclaimer). The purported disclaimer provided in pertinent part as follows:

> We are Charles E. Greve and David R. Greve. On January 4, 1999, your Honorable Register granted Letters Testamentary to us as Co-Executors under the Last Will and Testament of our late mother, Sarah W. Greve, she having died on December 27, 1998.
>
> In our capacities as Executors under the Last Will and Testament of Sarah W. Greve, we hereby disclaim the following:
>
> 1. The Power of Appointment and the right to exercise same which was granted to Sarah W. Greve under the Last Will and Testament of Sarah S. Wright, Deceased, said Last Will and Testament having been executed on July 29, 1933.
>
>    (a) The asset which would have been the subject of said Power of Appointment which we disclaim herein is a one sixth (1/6) share of the corpus of a Testamentary Trust created under said Last Will and Testament of Sarah S. Wright, such share of the corpus previously being held, in trust, by Mellon Bank, N.A., Successor to the Union Trust Company of Pittsburgh.
>
> 2. Any Power of Appointment and any right to exercise same which was granted to Sarah W. Greve under a Deed of Trust of Hester M. Wright dated May 11, 1976, [and amended by the agreement dated December 31, 1981] [the agreement to amend the inter vivos trust].
>
>    (a) The asset which would have been the subject of said Power of Appointment which we disclaim herein is a one sixth (1/6) share of the corpus of a Deed of Trust created by Hester M. Wright, such

> share of the corpus previously being
> held, in trust, by Mellon Bank, N.A.

On September 27, 1999, the estate filed Form 706, United States Estate (and Generation-Skipping Transfer) Tax Return (decedent's estate tax return).  Decedent's estate tax return did not include as part of decedent's total gross estate any amount with respect to the testamentary trust.  Nor did that return include as part of decedent's total gross estate any amount with respect to the inter vivos trust.  In Schedule H, Powers of Appointment (Schedule H), included as part of decedent's estate tax return, a notation stated "See attached explanation".  The estate attached to decedent's estate tax return a document identified as an Explanation as to Schedule H-Powers of Appointment (explanation as to Schedule H).  The explanation as to Schedule H provided in pertinent part as follows:

> At no time between July 29, 1933, and the date of her death did Sarah W. Greve, the Decedent herein, have any knowledge or understanding whatsoever that she possessed a power of appointment under the Testamentary Trust established under the Last Will and Testament of her grandmother, Mrs. Wright.  For that reason, there was absolutely no mention of such Power of Appointment in the Last Will and Testament of Sarah W. Greve and there was no specific testamentary disposition of the assets as to which she had such Power of Appointment. Rather, Sarah W. Greve made, in her Last Will and Testament, * * * a general residuary bequest and devise to her children, per stirpes.
>
> *       *       *       *       *       *       *
>
> In mid September 1999, when counsel for the Estate of Sarah W. Greve began to prepare this Return, he discovered that it might be concluded by the Internal

Revenue Service that the assets which were the subject of said Power of Appointment are includable in the gross Estate of Sarah W. Greve. For this reason, on September 24, 1999, Charles E. Greve and David R. Greve, the Executors of the Estate of Sarah W. Greve filed a Disclaimer, as to the Estate of Sarah W. Greve, as to said Power of Appointment with the Register of Wills of Allegheny County, Pennsylvania; and, on that same date, such Disclaimer was delivered to Mellon Bank, N.A., per Attorney Collins. * * *

The assets in said Trust and the fair market value of those assets on the date when Sarah W. Greve died are shown on a document, issued by Mellon Bank, N.A., entitled "Account Assets". * * * The fair market value of a one sixth (1/6) share of said assets is $314,612.42.

It is the position of the Estate of Sarah W. Greve that said $314,612.42 should not be included in the taxable Estate of Sarah W. Greve because Sarah W. Greve did not specifically exercise her Power of Appointment in the manner as directed in the Will of Mrs. Wright.

It is the position of the six (6) children of Sarah W. Greve that said $314,612.42 passed to them, in equal shares, pursuant to the Will of Mrs. Wright because they are the only heirs of Sarah W. Greve under the Intestate Laws of the Commonwealth of Pennsylvania.

Alternatively, if it is determined that the general residuary bequest in the Last Will and Testament of Sarah W. Greve constituted such an exercise, it is the position of the Estate of Sarah W. Greve that a proper and appropriate Disclaimer as to said Power of Appointment was timely filed.

The explanation as to Schedule H did not discuss any potential issue with respect to the power of appointment that decedent had with respect to $5,000 of the principal of the inter vivos trust.

Respondent issued a notice of deficiency (notice) to dece-

dent's estate.[6]  In that notice, respondent determined that decedent had a general power of appointment with respect to one-sixth of the principal of the testamentary trust and that decedent exercised that power in decedent's will.  Consequently, respondent increased decedent's total gross estate by $314,612, which was the date-of-death value that the estate attributed to such power in the explanation as to Schedule H and which respondent accepted.[7]  In the notice, respondent further determined that at the time of her death decedent had the power to withdraw $5,000 from the principal of the inter vivos trust and that that power was a general power of appointment.  Consequently, respondent increased decedent's total gross estate by $5,000.

## OPINION

The parties do not address section 7491(a).  The estate filed decedent's estate tax return on September 27, 1999.  We presume that respondent's examination of that return commenced after July 22, 1998, and that section 7491(a) is applicable in the instant case.  The estate has failed to establish that it

---

[6]In the notice, respondent determined to allow all of the expenses that the estate claimed in Schedule J, Funeral Expenses and Expenses Incurred in Administering Property Subject to Claims, included as part of decedent's estate tax return.  The parties stipulated that as a result of the instant case the estate has incurred certain additional expenses that are deductible.

[7]The parties stipulated that the value of one-sixth of the principal of the testamentary trust on the date of decedent's death was $320,732.11, and not $314,612.

satisfies section 7491(a)(2)(A) and (B) with respect to any factual issue relating to respondent's deficiency determinations that remains in this case. On the record before us, we conclude that the estate's burden of proof on any such issue, see Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933), does not shift to respondent under section 7491(a).

We turn first to the power of appointment that decedent had with respect to one-sixth of the principal of the testamentary trust. For the first time on brief, the estate advances the position that, pursuant to the testamentary trust, decedent had a special power of appointment, and not a general power of appointment, with respect to that portion of the principal of that trust.[8] The estate does not cite any Code section, Treasury regulation, or caselaw in support of its position.[9] Instead, the

---

[8]We conclude that the estate's position on brief that decedent had a special power of appointment, and not a general power of appointment, with respect to one-sixth of the principal of the testamentary trust raises a new issue. However, respondent does not object to, and we find no prejudice to respondent as a result of, the estate's raising that issue for the first time on brief.

[9]The estate acknowledges that if the Court were to find that decedent had a general power of appointment with respect to one-sixth of the principal of the testamentary trust, under Pennsylvania law decedent exercised that power through the residuary clause in her will. In that event, the estate would concede that the portion of that principal subject to that power is includible in decedent's gross estate under sec. 2041(a)(1). The estate's position with respect to Pennsylvania law, see sec. 20.2041-1(d), Estate Tax Regs., accurately reflects that under Pennsylvania law an individual who has a general power of appointment may exercise that power through the residuary clause in that individual's will. See 20 Pa. Cons. Stat. Ann. sec. 2514 (13) (West Supp.

(continued...)

estate argues:

> Pursuant to said Testamentary Trust [the testamentary trust created in Ms. Wright's will], the death of any of the six children of Robert Wright had the effect of terminating the Trust as to the principal comprising said Testamentary Trust represented by that portion of the income therefrom which such child had been receiving prior to her death.

> Pursuant to said Testamentary Trust, the recipient(s) of that principal were, as to such deceased child of Robert Wright, here, Mrs. Greve, such persons as Mrs. Greve shall by her Last Will and Testament, designate and appoint.

>    *     *     *     *     *     *     *

> It is respectfully submitted that the above described Trust termination language constituted a special and not a general power of appointment in favor of Mrs. Greve.

> Pursuant to the clear language of said Trust termination provision, Mrs. Greve was required to designate and appoint persons to take that principal. The word "designate" is defined, in Websters New Collegiate Dictionary, as to distinguish or to indicate and set apart for a specific purpose or to denote. The word "appoint" is defined, in Websters New Collegiate Dictionary, as to fix or set officially or to name officially.

> It is respectfully submitted that nowhere in her Will did Mrs. Greve fulfill the express requirement in said Trust termination language that she had to "designate and appoint" persons to take the specified portion of the principal in said Testamentary Trust over which she had control by her Will.

> In summary, Mrs. Greve did not receive a general power of appointment in the Testamentary Trust created by Mrs. Wright. What she received was the right to specifically designate and appoint those persons who would take principal. She completely failed so to do;

[9](...continued)
2003); In re Estate of Jaekel, 424 Pa. 433, 438 (1967).

as such, pursuant to said Testamentary Trust * * * that principal is not an asset of the Estate of Mrs. Greve for federal estate tax purposes. [Reproduced literally.]

It is respondent's position that decedent had a general power of appointment with respect to one-sixth of the principal of the testamentary trust; under Pennsylvania law decedent exercised that power through the residuary clause in her will; and consequently that portion of the testamentary trust is includible in decedent's gross estate under section 2041(a)(1).

Section 2041 provides in pertinent part as follows:

SEC. 2041. POWERS OF APPOINTMENT.

(a) In General.--The value of the gross estate shall include the value of all property--

(1) Powers of appointment created on or before October 21, 1942.--To the extent of any property with respect to which a general power of appointment created on or before October 21, 1942, is exercised by the decedent--

(A) by will * * *

        *       *       *       *       *       *       *

(b) Definitions.--For purposes of subsection (a)--

(1) General power of appointment.--The term "general power of appointment" means a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate * * *

The regulations under section 2041 provide the following definition of the term "power of appointment":

(b) Definition of "power of appointment"--(1) In general. The term "power of appointment" includes all powers which are in substance and effect powers of

appointment regardless of the nomenclature used in creating the power and regardless of local property law connotations.  For example, if a trust instrument provides that the beneficiary may appropriate or con- sume the principal of the trust, the power to consume or appropriate is a power of appointment. * * *

Sec. 20.2041-1(b)(1), Estate Tax Regs.

The regulations under section 2041(b)(1) elaborate as follows on the definition of the term "general power of appoint- ment" set forth in that section:

(c) Definition of "general power of appointment"–– (1) In general.  The term "general power of appoint- ment" as defined in section 2041(b)(1) means any power of appointment exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate, except (i) joint powers, to the extent provided in § § 20.2041-2 and 20.2041-3 * * * A power of ap- pointment is not a general power if by its terms it is either––

(a) Exercisable only in favor of one or more designated persons or classes other than the decedent or his creditors, or the decedent's estate or the creditors of his estate, or

(b) Expressly not exercisable in favor of the decedent or his creditors, or the decedent's estate or the creditors of his estate.

Sec. 20.2041-1(c)(1), Estate Tax Regs.

Although the estate's position on brief regarding the power of appointment with respect to one-sixth of the principal of the testamentary trust is difficult to understand, as best we can comprehend it, the estate's position is that, because the testa- mentary trust gave to decedent the power to "designate and appoint" in her will the persons to take one-sixth of the princi-

pal of the testamentary trust, decedent had a special power of appointment.  We reject the estate's position.

The testamentary trust created under Ms. Wright's will provided in pertinent part as follows:

> Upon the death of any of my said children leaving issue, him or her surviving, the income arising from that portion of th[e] [p]rincipal to which said child [was] entitled to receive the income at the time of his or her death shall be paid over equally among such surviving issue for and during the full term of their natural lives * * * [.] <u>Upon the death of any issue of a deceased child of mine while such issue may be entitled to receive a portion of income herefrom, the principal of the fund represented by that portion of the income which such issue was receiving at the time of his or her death shall be paid over free and discharged of any trust to such persons and in such manner as he or she shall by his or her Last Will and Testament designate and appoint</u>, and in the absence of such testamentary disposition it shall be paid over to those persons who are then his or her heirs under the then existing Intestate Laws of the Commonwealth of Pennsylvania.  [Emphasis added.]

The above-quoted underscored language in the testamentary trust gave decedent the unlimited power to appoint through her will one-sixth of the principal of that trust in favor of whomever decedent desired.  We conclude that the foregoing power is a general power of appointment (i.e., a power of appointment exercisable in favor of decedent's estate, decedent's creditors, or the creditors of decedent's estate).  See sec. 2041(b)(1); <u>Martin v. United States</u>, 780 F.2d 1147, 1148 (4th Cir. 1986); see also sec. 20.2041-1(c)(1)(a) and (b), Estate Tax Regs.  As discussed <u>supra</u> note 9, the estate acknowledges that if the Court

were to find that decedent had a general power of appointment with respect to one-sixth of the principal of the testamentary trust, under Pennsylvania law decedent exercised that power through the residuary clause in her will, and one-sixth of the principal of that trust (i.e., $320,732.11) is includible in decedent's gross estate under section 2041(a)(1).[10]

We turn now to the power of appointment that decedent had with respect to $5,000 of the principal of the inter vivos trust. For the first time on brief, the estate advances the position that, pursuant to the agreement to amend the inter vivos trust, under section 2041(b)(1)(C)(ii) decedent did not have at the time of her death a general power of appointment with respect to $5,000 of the principal of that trust.[11] In support of its

_____

[10]The estate may also be arguing on brief that decedent did not exercise the power of appointment that decedent had with respect to one-sixth of the principal of the testamentary trust because she did not specifically name any beneficiaries of that power in her will. We reject any such argument. Decedent's will provided in pertinent part as follows:

> SECOND: I give my remaining entire estate in equal shares to my children, per stirpes * * *.

As discussed supra note 9, the estate has acknowledged, and we have found, that under Pennsylvania law an individual who has a general power of appointment may exercise that power through the residuary clause in that individual's will.

[11]We conclude that the estate's position on brief that under sec. 2041(b)(1)(C)(ii) decedent did not have at the time of her death a general power of appointment with respect to $5,000 of the principal of the inter vivos trust raises a new issue. However, respondent does not object to, and we find no prejudice
(continued...)

position, the estate argues:

>    By an Agreement executed on December 31, 1981,
> between Mellon, the Trustee as to the Deed of Trust and
> the six beneficiaries named in the Deed of Trust:
>
>    A.    The six separate trusts for each such benefi-
>          ciary were merged into one fund.
>
>    B.    No principal whatsoever from such single fund
>          could be distributed to any beneficiary ex-
>          cept that at the request of Robert E. Wright,
>          the attorney in fact for each beneficiary,
>          Mellon was required to make equal distribu-
>          tions of principal to each beneficiary not to
>          exceed $5,000.00 to each.
>
>    C.    Although all said beneficiaries had the power
>          to direct said attorney in fact to request
>          such distribution of principal, no one of
>          them had such right.
>
>    The effect of the above provisions is that Mrs.
> Greve could only withdraw $5,000.00 per year from the
> now single trust established in the Deed of Trust in
> conjunction with five persons each of whom having a
> substantial interest in such single trust and each of
> whom, for this purpose, having an interest in such
> single trust which was adverse to exercise of the power
> in favor of Mrs. Greve.
>
>    Clearly, no one beneficiary of such single trust
> was given the right to unilaterally withdraw principal
> therefrom to the exclusion of any other beneficiary
> because any such unilateral withdrawal would adversely
> affect the other beneficiaries.
>
>    *      *      *      *      *      *      *
>
>    It is respectfully submitted, by reason of * * *
> [section 2041(b)(1)(C)(ii)] that Mrs. Greve did not
> possess a general power of appointment as to said
> $5,000.00 and that such sum is not an asset of her

---

[11](...continued)
to respondent as a result of, the estate's raising that issue for
the first time on brief.

gross Estate.  [Reproduced literally.]

It is respondent's position that decedent had at the time of her death a general power of appointment with respect to $5,000 of the principal of the inter vivos trust and that consequently $5,000 is includible in decedent's gross estate under section 2041(a)(2).  In support of that position, respondent argues:

> Petitioner contends that by virtue of an agreement executed by all of the then living beneficiaries of the inter vivos trust and the trustee after the death of the settlor, Decedent did not have the right to withdraw $5,000 of trust principal at her death and therefore did not possess a general power of appointment over that amount.  Respondent disagrees as to the effect of the agreement.

> The agreement entered into by the beneficiaries did bar the beneficiaries from withdrawing $5,000 of trust principal while the agreement was in effect. However, the agreement terminated by its terms on the happening of any of four events, including the death of a beneficiary.  Pursuant to the terms of the agreement, when a beneficiary died, her share was withdrawn from the agreement and disposed of according to the original trust document.  The agreement terminated when Decedent herein died, if not earlier, and Decedent possessed at her death the right to withdraw $5,000 of trust principal.  Accordingly, that amount is includible in her estate pursuant to I.R.C. § 2041(a)(2).  [Fn. ref. omitted.]

Section 2041 provides in pertinent part as follows:

SEC. 2041.  POWERS OF APPOINTMENT.

> (a) In General.--The value of the gross estate shall include the value of all property--

> \*      \*      \*      \*      \*      \*      \*

>> (2) Powers created after October 21, 1942.--To the extent of any property with respect to which the decedent has at the time of his death a general power

of appointment created after October 21, 1942 * * *

Section 2041(b)(1)(C)(ii) excepts, inter alia, the following power of appointment from the definition of the term "general power of appointment" in section 2041(b)(1):

> (C) In the case of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person--

> \* \* \* \* \* \* \*

>> (ii) If the power is not exercisable by the decedent except in conjunction with a person having a substantial interest in the property, subject to the power, which is adverse to exercise of the power in favor of the decedent--such power shall not be deemed a general power of appointment.  For the purposes of this clause a person who, after the death of the decedent, may be possessed of a power of appointment (with respect to the property subject to the decedent's power) which he may exercise in his own favor shall be deemed as having an interest in the property and such interest shall be deemed adverse to such exercise of the decedent's power.

The regulations under section 2041(b)(1)(C)(ii) elaborate as follows on the power of appointment described in that section:

> (c) <u>Joint powers created after October 21, 1942</u>. The treatment of a power of appointment created after October 21, 1942, which is exercisable only in conjunction with another person is governed by section 2041(b)(1)(C), which provides as follows:

> \* \* \* \* \* \* \*

> (2) Such power is not considered a general power of appointment if it is not exercisable by the decedent except with the consent or joinder of a person having a substantial interest in the property subject to the power which is adverse to the exercise of the power in favor of the decedent, his estate, his creditors, or

the creditors of his estate. An interest adverse to the exercise of a power is considered as substantial if its value in relation to the total value of the property subject to the power is not insignificant. For this purpose, the interest is to be valued in accordance with the actuarial principles set forth in § 20.2031-7 or, if it is not susceptible to valuation under those provisions, in accordance with the general principles set forth in § 20.2031-1. A taker in default of appointment under a power has an interest which is adverse to an exercise of the power. A coholder of the power has no adverse interest merely because of his joint possession of the power nor merely because he is a permissible appointee under a power. However, a coholder of a power is considered as having an adverse interest where he may possess the power after the decedent's death and may exercise it at that time in favor of himself, his estate, his creditors, or the creditors of his estate.

Sec. 20.2041-3(c), Estate Tax Regs.

In support of its position that, pursuant to the agreement to amend the inter vivos trust, under section 2041(b)(1)(C)(ii) decedent did not have at the time of her death a general power of appointment with respect to $5,000 of the principal of the inter vivos trust, the estate relies on the agreement to amend the inter vivos trust which was entered into by Mellon Bank, N.A., and decedent and Mr. Wright's other children, who were Hester Wright's nieces and nephew. We reject the estate's position.

The deed of trust provided in pertinent part as follows:

(a) * * * In addition, the Trustee shall pay to said niece or nephew such sums from prin[cipal] as he or she may request in writing, not to exceed FIVE THOUSAND ($5,000) DOLLARS in any one calendar year on a noncumulative basi[s.]

The agreement to amend the inter vivos trust provided in

pertinent part as follows:

> 4.   This Agreement shall terminate upon the happening of any of the following events:
>
>> (a)   the death of any Beneficiary;
>>
>> (b)   written notice to the Trustee that any Beneficiary desires to terminate the Agreement;
>>
>> (c)   written notice by the Trustee to the Attorney-in-Fact that it desires to terminate the Agreement;
>>
>> (d)   revocation by any Beneficiary of the appointment of the Attorney-in-Fact.
>
> If the Agreement shall be terminated by the death of * * * any Beneficiary * * * The share of the Beneficiary dying * * * shall be withdrawn from this Agreement and shall be administered, distributed or otherwise disposed of according to the terms of the Deed of Trust. * * *

We note initially that the agreement to amend the inter vivos trust provided that it was intended to relate only to the administration and management of the principal of that trust and not to affect the substantive rights of any distributees under the deed of trust.  Moreover, assuming arguendo that each of the beneficiaries of the inter vivos trust other than decedent had an interest in $5,000 of the principal of that trust that was substantial and that was adverse to decedent's interest and that the agreement to amend the inter vivos trust had not terminated before decedent's death,[12] pursuant to its terms, that agreement

-----

[12]The estate has failed to carry its burden of establishing
(continued...)

to amend terminated upon decedent's death, and decedent's share (i.e., $5,000 of the principal of the inter vivos trust) was withdrawn from that agreement and was disposed of according to the terms of the deed of trust. Thus, even under the foregoing assumptions, we conclude that decedent had a general power of appointment in favor of herself with respect to $5,000 of the principal of the inter vivos trust. See sec. 2041(b)(1). On the record before us, we find that decedent had at the time of her death a general power of appointment with respect to $5,000 of the principal of the inter vivos trust. We hold that $5,000 is includible in decedent's gross estate under section 2041(a)(2).

We have considered all of the contentions and arguments of the parties that are not discussed herein, and we find them to be without merit, irrelevant, and/or moot.

To reflect the foregoing,

Decision will be entered

under Rule 155.

---

[12](...continued)
that the agreement to amend the inter vivos trust had not terminated before decedent's death by (1) written notice by any beneficiary to the trustee that that beneficiary desired to terminate that agreement, (2) written notice by the trustee to the attorney-in-fact that the trustee desired to terminate that agreement, and/or (3) revocation by any beneficiary of the appointment of the attorney-in-fact.